782 So.2d 1188 (2001)
Kaylon Delaine Lisenby BONDS and Odie Bonds, Individually and on Behalf of their Minor Daughter, Kodi Bonds
v.
ABBEVILLE GENERAL HOSPITAL.
No. 00-1462.
Court of Appeal of Louisiana, Third Circuit.
April 4, 2001.
*1190 Kenneth W. Dejean, Lafayette, LA, Counsel for Plaintiffs/Appellants, Kaylon Delaine, Lisenby Bonds and Odie Bonds, Individually and on Behalf of Their Minor Daughter, Kodi Bonds.
Robert A. Matook, Jr., Lafayette, LA, Counsel for Defendant/Appellant, Security Patrol Agency, Inc.
P. Scott Jolly, Baton Rouge, LA, Counsel for Defendant/Appellee, Abbeville General Hospital.
Court composed of DOUCET, Chief Judge, THIBODEAUX, and WOODARD, Judges.
DOUCET, Chief Judge.
The Plaintiffs appeal the trial court's dismissal of their claims against the Defendant, Abbeville General Hospital (the Hospital), pursuant to the Hospital's motion for summary judgment.
The underlying facts of this case are not in dispute. On November 13, 1996, at about 8:03 p.m., Kaylon Bonds arrived at the Hospital to begin her shift as an x-ray technician. She parked near a door to the hospital. After exiting her car she was accosted by Lawrence Stagg. He held a gun to her side and forced her back into her car. He directed her to drive to a deserted area where he beat and raped her.
Mrs. Bonds, her husband and her daughter filed suit against the hospital and Security Patrol Agency, Inc. (Security), the security service that provided the guard on duty in the parking lot that evening. The Hospital and Security filed motions for summary judgment asserting *1191 that they were entitled to dismissal of the Plaintiffs' claims. Both asserted that the criminal assault on Kaylon Bonds was not foreseeable and that, as a result, they did not have a legal duty to protect her against such assaults. The Hospital additionally asserted that even if it had a duty, the duty was discharged by hiring an outside security service.
The motions were submitted to the trial court on briefs. The trial court granted the Hospital's motion for summary judgment and denied that of Security, assigning written reasons. The Plaintiffs appeal the trial court's decision to grant the Hospital's motion. Security appeals the trial court's denial of its motion.

STANDARD OF REVIEW
An appellate court reviews summary judgments de novo, applying the same criteria as the district court in determining whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State Univ., 591 So.2d 342 (La.1991); Haley v. Calcasieu Parish School Bd., 99-883 (La.App. 3 Cir. 12/8/99); 753 So.2d 882, writ denied, 2000-54 (La.2/24/00); 755 So.2d 242. Article 966(B) of the Louisiana Code of Civil Procedure provides that summary judgment shall be granted where the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law.
The burden of showing that there are no genuine issues of material fact is borne by the mover. La.Code Civ.P. art. 966(C)(2). To satisfy this burden, the mover must present supportive evidence that the motion should be granted. Once the mover establishes a prima facie showing, the burden of production shifts to the nonmoving party to present evidence of the existence of issues of material fact which preclude summary judgement. An adverse party may not rest on the pleadings but must set forth, by affidavit or otherwise, specific facts showing that there is a genuine issue for trial. La.Code Civ.P. art. 967.
Mercury Cellular Telephone Co. v. Calcasieu Parish of La., 00-0318, p. 4 (La.App. 3 Cir. 12/13/00); 773 So.2d 914, 917.

THE HOSPITAL'S DUTY
The Plaintiffs assert that the trial court erred in finding that the Hospital owed no duty to protect Kaylon Bonds from this assault. The Fourth Circuit in Fleming v. Hilton Hotels Corp., 99-1996, p. 3 (La.App. 4 Cir. 7/12/00); 774 So.2d 174, 177 (emphasis added), explained that method by which a court must determine whether liability exists:
Liability based on negligence is present when a plaintiff, applying a duty risk analysis, is able to establish the following: the conduct is a cause in fact of the resulting harm; the defendant owed a duty to the plaintiff; the duty was breached; and the risk of harm was within the scope of the duty. Fox v. Board of Supervisors of LSU, 576 So.2d 978, 981 (La.1991); Mart v. Hill, 505 So.2d 1120 (La.1987); Hill v. Lundin & Assoc., Inc., 260 La. 542, 256 So.2d 620 (1972). Furthermore, in determining whether liability exist (sic) under a duty-risk analysis, a plaintiff must prove that the conduct in question was the cause-in-fact of the resulting harm, that defendant owed a duty to plaintiff that defendant breached, and the risk of harm was within the scope of the protection afforded by the duty breached. Hartman v. Vermillion Parish Police Jury, 94-893 (La.App. 3 Cir 3/1/93), 651 So.2d 476, 479, writ denied, 95-0778 (La.5/5/95), 654 So.2d 326, citing Campbell v. Louisiana Dept. of Trans. and Dev., 94-1052 (La.1/17/95), 648 So.2d 898. The existence *1192 of a duty is a question of law and similarly the question as to whether a particular risk is included within the scope of a particular duty is a legal issue to be resolved by the court. Dillon v. Louisiana Power & Light, 557 So.2d 293, 295 (La.App. 4 Cir.1990); LeBlanc v. Wall, 430 So.2d 1130 (La.App. 1 Cir. 1983), writ denied, 438 So.2d 571 (La. 1983).
Since this court must use the same criteria as the trial court in determining whether summary judgment was appropriate, we must determine whether the Hospital owed a duty to protect Kaylon Bond from criminal attack by third parties under the facts of this case.
The Louisiana Supreme Court recently set out the duty of a business to protect its patrons against criminal acts by third parties:
[A]lthough business owners are not the insurers of their patrons' safety, they do have a duty to implement reasonable measures to protect their patrons from criminal acts when those acts are foreseeable. We emphasize, however, that there is generally no duty to protect others from the criminal activities of third persons. This duty only arises under limited circumstances, when the criminal act in question was reasonably foreseeable to the owner of the business. Determining when a crime is foreseeable is therefore a critical inquiry.
Posecai v. Wal-Mart Stores, Inc., 99-1222, pp. 5-6 (La.11/30/99); 752 So.2d 762, 766-67. In Posecai, the supreme court adopted a balancing test as the best method of determining foreseeability, stating:
The foreseeability of the crime risk on the defendant's property and the gravity of the risk determine the existence and the extent of the defendant's duty. The greater the foreseeability and gravity of the harm, the greater the duty of care that will be imposed on the business. A very high degree of foreseeability is required to give rise to a duty to post security guards, but a lower degree of foreseeability may support a duty to implement lesser security measures such as using surveillance cameras, installing improved lighting or fencing, or trimming shrubbery. The plaintiff has the burden of establishing the duty the defendant owed under the circumstances
Id. at p. 8-9; 752 So.2d at 768.
In support of their motions for summary judgment the defendants filed into the record the affidavits of Willis A. Hebert, Ivory Jones, and the deposition of Kaylon Bonds. Willis Hebert, the Human Resource Director/Risk Manager for the Hospital swore that he had no knowledge or record of criminal activity taking place in the employee parking lot at the Hospital and that the hospital was not aware of any other criminal attack on a visitor or employee since the Hospital opened in 1964. His affidavit further shows that the Hospital hired Security to provide security personnel for the Hospital and that the Hospital's own employees did not patrol the parking lot.
Ivory Jones swore that he is employed as a security guard at the Hospital and was patrolling the Hospital parking lot on the date in question. He attested that Security was under contract to supply security services to the Hospital. Jones further swore that Security had no knowledge, record or notice of criminal activity ever taking place in the Hospital parking lot. His affidavit further shows that when Ms. Bonds did not appear at work at her expected time, he entered the building and asked Hospital personnel to contact her family, then returned to the parking lot to resume his duties and watch for Ms. Bonds.
*1193 Ms. Bonds' deposition was used by the Defendants and the Plaintiffs to support their arguments concerning the motions for summary judgment. Parts of her testimony are relevant to the issue of foreseeability. Ms. Bonds deposed that she came on duty every evening at 8:00 p.m. She parked her vehicle behind the Hospital building in the employee parking lot, where she was required to park, and entered the Hospital through a back door. No other personnel were making shift changes at the time she entered the parking lot each evening. Ms. Bonds testified that she parked in the same spot every night, in a parking place under a light right in front of the door. While she had never had any problems in the parking lot, Ms. Bonds was fearful about it because the lighting was dim and there weren't any guards on duty past eleven o'clock on weekdays. She testified that many times the existing lighting did not work. When she reported her concerns about the safety of the parking lot to her department supervisor, Ms. Bonds alleges that she was told that budget restraints prevented changes. Ms. Bonds agreed that there was a security guard on duty in the parking lot each night and admitted that he usually met her outside and walked her to the door. On the night of the incident made the basis of this suit, she arrived at the Hospital at about 8:03 p.m. She saw no hospital personnel in the parking lot when she arrived. The assailant appeared at her car door, held a gun on her and forced her back into her vehicle.
The Plaintiffs further introduced the affidavit of Dr. Wade Schindler, to which his expert report was attached. Dr. Schindler, president of the Orleans Regional Security Institute, attested that he is an expert in safety measures against criminals and security matters. He stated that he was retained by the Plaintiffs to examine the foreseeability of a violent attack on the employees of the Hospital. Dr. Schindler's affidavit shows that the Hospital is situated in a high crime area and he opined that rapes occur in the neighborhood of the Hospital at a rate 4.92 times the national average. He further opined that the attack would not have occurred had the security guard been waiting to escort Ms. Bonds or had other security measures, such as improved lighting and perimeter barriers been in place.
As the court stated in Posecai, 99-1222, p. 9; 752 So.2d at 768:
The foreseeability and gravity of the harm are to be determined by the facts and circumstances of the case. The most important factor to be considered is the existence, frequency and similarity of prior incidents of crime on the premises, but the location, nature and condition of the property should also be taken into account. It is highly unlikely that a crime risk will be sufficiently foreseeable for the imposition of a duty to provide security guards if there have not been previous instances of crime on the business' premises.
In this case, it is undisputed that there have been no other instances of crimes in the Hospital parking lot. Further, a security guard was present. Therefore, we find that the evidence of record does not support the conclusion that the Hospital could have reasonably foreseen the attack on Ms. Bonds, given the precautions against crime it had taken. Even if a crime were foreseeable, the hospital had already implemented the safeguard recommended by the supreme court for those cases where the risk of the occurrence of a crime is highly likely, that is the employment of a security guard. Accordingly, record does not support a finding that the Hospital owed a duty to Ms. Bonds to protect her from this sort of attack under the circumstances of this case. Therefore, *1194 we find no error in the trial court's decision to grant the Hospital's motion for summary judgment.

DID SECURITY BREACH A DUTY TO THE PLAINTIFF?
Security asserts that the trial court erred in not granting its motion for summary judgment because the evidence of record shows that it fulfilled its duty to provide adequate security as provided by its contract with the Hospital. However, we find, as did the trial court, that a question of fact remains in this regard. As the trial court stated in its written reasons:
It is essentially undisputed that on the night in question, Kaylon arrived at the Hospital at approximately three minutes after 8:00 p.m. Her shift normally began at 8:00 p.m. Jones testified that when Kaylon did not arrive at the typical 8:00 p.m. time, he left his post to inform her supervisor. Unfortunately, it was during that time that Jones left his post that Kaylon was abducted from the Hospital parking lot and subsequently raped.
We agree with the trial court that in light of these facts, "there is a genuine issue as to material fact regarding whether Security patrol breached its duty to provide adequate security to Hospital patrons and employees when its employee left his post during his shift."
Accordingly, Security's motion for summary judgment was properly denied.

CONCLUSION
For these reasons, the judgment of the trial court is affirmed. Costs of this appeal are to be paid one-half by the Plaintiffs and one-half by Security.
AFFIRMED.