787 So.2d 1115 (2001)
Melvin MARMER
v.
QUEEN OF NEW ORLEANS AT THE HILTON, Joint Venture, D/B/A Flamingo Casino, and Todd Lucas.
No. 2000-CA-1598.
Court of Appeal of Louisiana, Fourth Circuit.
May 16, 2001.
*1116 Darleen M. Jacobs, Paul D. Hesse, Al Ambrose Sarrat, Jacobs & Sarrat, New Orleans, Counsel for Plaintiff/Appellant.
Peter B. Sloss, Molly B. Halloran, Murphy, Rogers & Sloss, New Orleans, Counsel for Defendants/Appellees.
Court composed of Chief Judge WILLIAM H. BYRNES, III, Judge CHARLES R. JONES, Judge PATRICIA RIVET MURRAY.
MURRAY, J.
The plaintiff, Melvin Marmer, appeals a trial court judgment granting a motion for summary judgment brought by the defendant, Queen of New Orleans at the Hilton Joint Venture, d/b/a Flamingo Casino ("the casino"). For the reasons that follow, we affirm.
The facts of this case are not disputed. Around lunchtime on Easter Sunday, April 7, 1996, Melvin Marmer and his wife boarded the casino, a gambling vessel on the Mississippi River in New Orleans. They proceeded first to the "player's club desk" to obtain certain cards. Before they began gambling, Mr. Marmer went to the restroom. In the restroom, he allegedly was assaulted by Todd Lucas, another patron aboard the vessel. The two men struggled. The incident ended when Mr. Lucas pulled Mr. Marmer away from the door and ran out of the restroom. Mr. Marmer also ran out of the restroom, alerted security personnel, and identified Mr. Lucas who was apprehended and detained by the casino's security personnel and arrested by New Orleans Harbor Police.
Mr. Marmer sued the casino and Todd Lucas for damages stemming from this incident, including a torn rotator cuff necessitating surgery.[1] In his lawsuit, Mr. Marmer alleged that the casino failed to properly monitor the men's restroom, failed to institute proper security inspection procedures, failed to come to his aid *1117 despite his screams for help, and failed to have security which was attentive to the needs of the vessel's patrons.
On June 5, 1998, the casino filed a motion for summary judgment claiming it was entitled to dismissal of the claims against it. The casino asserted that it could not be held liable for the unforeseen and unanticipated criminal acts of a third party against Mr. Marmer because it did not have a legal duty to protect against such actions. The casino submitted Mr. Mariner's deposition and affidavits from two of its security supervisors stating, among other things, that no patron had ever been assaulted on the vessel, they had no reason to suspect that Mr. Lucas posed a threat to other patrons, and the casino had reasonable precautions in place to ensure the safety of its patrons. Mr. Marmer opposed this motion for summary judgment, submitting parts of his deposition and two cases from Nevada stating that gambling establishments in general may provide "a fertile environment" for criminal acts.
On July 14, 1998, after a hearing, the trial court denied the casino's motion for summary judgment without giving written reasons. Subsequently, in September 1999, the case was set for a non-jury trial on March 1, 2000.
On January 7, 2000, the casino again filed a motion for summary judgment asking the trial court to dismiss the claims against it. The casino relied upon a recent Louisiana Supreme Court decision, Posecai v. Wal-Mart Stores, Inc., 99-1222 (La.11/30/99), 752 So.2d 762, to support its claim that it owed no legal duty to protect against unforeseeable and unanticipated criminal acts of a third party. With this motion, the casino again submitted a portion of Mr. Manner's deposition and the two affidavits from security supervisors at the casino, as well as the Posecai decision.
The casino's second motion for summary judgment was set for hearing on February 11, 2000. Mr. Marmer submitted an opposition to this motion for summary judgment and resubmitted a portion of his deposition as well as the two Nevada cases.
By judgment of February 29, 2000, the trial court granted the casino's second motion for summary judgment, assigning written reasons.[2] Mr. Marmer appeals the trial court's decision to grant the casino's motion for summary judgment.
In its Reasons for Judgment, the trial court stated:
The Plaintiff did not introduce any evidence establishing that this particular assault was reasonably foreseeable. Further, the Plaintiff has failed to meet his burden of proving that there was a legal duty to protect him against this specific criminal act. The Defendants, however, have provided evidence that this specific assault could not be foreseen or prevented. According to Posecai v. Wal-Mart, 99-1222 (La.11/30/99); [752] So.2d [762], unless there have been previous instances of crime on the business' premises, then "it is highly unlikely that a crime risk will be sufficiently foreseeable for the imposition of a duty to provide security guards."
Appellate courts review summary judgments de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Taylor v. Rowell, 98-2865 (La.5/18/99), 736 So.2d 812, 814. The summary judgment procedure is designed to *1118 secure the just, speedy and inexpensive determination of actions. Two Feathers Enterprises, Inc. v. First National Bank, 98-0465 (La.App. 4 Cir. 10/14/98), 720 So.2d 398, 400. This procedure is now favored and shall be construed to accomplish these ends. La.Code Civ.P. art. 966(A)(2). La.Code Civ.P. art. 966 provides that summary judgment shall be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law.
The party who files the motion for summary judgment has the burden of showing that no genuine issues of material fact exist. La.Code Civ.P. art. 966(C)(2). To satisfy this burden, the movant must present evidence to support his motion. However, if, as in the instant case, the movant will not bear the burden of proof at trial, his burden on the motion does not require him to negate all essential elements of the plaintiffs claim, but rather is to point out that there is an absence of factual support for one or more elements essential to the claim. La.Code Civ.P. art. 966(C)(2); Fairbanks v. Tulane University, 98-1228 (La.App. 4 Cir. 3/31/99), 731 So.2d 983, 985.
After the movant has met its initial burden of proof, the burden shifts to the non-moving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. La.Code Civ.P. art. 966(C)(2). If the non-moving party fails to meet this burden, there is no genuine issue of material fact, and the movant is entitled to summary judgment. La.Code Civ.P. art. 966; Schwarz v. Administrators of Tulane Educational Fund, 97-0222 (La.App. 4 Cir. 9/10/97), 699 So.2d 895, 897. When a motion for summary judgment is properly supported, the non-moving party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue of material fact for trial. La.Code Civ.P. art. 967.
In his first assignment of error, Mr. Marmer asserts that the casino did not bring its second motion for summary judgment in a timely manner, and therefore the trial court should not have heard the motion. He refers to the trial court's standard pre-trial order, which provides as a deadline, "Pending motions, rules or exceptions, not brought for hearing or disposed of thirty (30) days prior to trial will be considered as waived or abandoned." The casino filed its motion on January 7, 2000. On January 12, 2000, the trial court set the motion for hearing on February 11, 2000. The trial date was set for March 1, 2000.
Mr. Marmer claims he was prejudiced by the trial court's failure to follow its own order. Although not clear, the claim of prejudice appears to involve his purchase of an airline ticket to travel to New Orleans.
Even if the trial court's standard pre-trial order had the force of a local rule of court, it could not conflict with a legislative act such as La.Code Civ.P. art. 966(A)(1) which provides that a defendant's motion for summary judgment may be made at any time. See Rodrigue v. Rodrigue, 591 So.2d 1171 (La.1992). Moreover, Mr. Marmer has given no compelling reason for us to abrogate the trial court's discretion to deviate from its own pre-trial order to entertain motions in the time frame it deems appropriate, or, for that matter, to interpret its own orders. In this case, the trial court did not abuse its discretion in hearing a motion for summary *1119 judgment three weeks before the date set for trial.
In his second assignment of error, Mr. Marmer asserts that the trial court erred in applying the Posecai decision retroactively. In Louisiana, however, judicial decisions apply both prospectively and retroactively. Hulin v. Fibreboard, 178 F.3d 316, 327 (5th Cir.1999); Harlaux v. Harlaux, 426 So.2d 602, 604(La.), cert. denied, 464 U.S. 816, 104 S.Ct. 74, 78 L.Ed.2d 86 (1983); Succession of Clivens, (on rehearing) 426 So.2d 585 (La.1982). The trial court did not err in considering the Posecai decision in formulating its ruling on the summary judgment motion.
In his third assignment of error, Mr. Marmer claims that the trial court erred in granting summary judgment by incorrectly interpreting the Posecai decision. Citing several Nevada cases, Mr. Marmer contends that the casino owed a duty to him to protect him from the assault. Mr. Marmer further claims that the existence of a security force at the casino should be considered as part of the foreseeability aspect of the balancing test adopted in Posecai.
In Posecai, the court addressed the sole issue of whether Sam's Club, a discount store, owed a duty to protect the plaintiff from the criminal act of a third party under the facts and circumstances of that case. In that case, the plaintiff was robbed at gunpoint when she approached her car in the Sam's parking lot. Explaining the appropriate analysis to use to determine a defendant's liability, the court in Posecai, stated:
This court has adopted a duty-risk analysis to determine whether liability exists under the particular facts presented. Under this analysis the plaintiff must prove that the conduct in question was the cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant and the risk of harm was within the scope of protection afforded by the duty breached. Syrie v. Schilhab, 96-1027, p. 4-5 (La.5/20/97), 693 So.2d 1173, 1176-77; Berry v. State, 93-2748, p. 4 (La.5/23/94), 637 So.2d 412, 414. Under the duty-risk analysis, all four inquiries must be affirmatively answered for plaintiff to recover. LeJeune v. Union Pacific R.R., 97-1843, p. 6 (La.4/14/98), 712 So.2d 491, 494.
A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty. Meany v. Meany, 94-0251, p. 6 (La.7/5/94), 639 So.2d 229, 233. Whether a duty is owed is a question of law. Peterson v. Gibraltar Sav. & Loan, 98-1601, 98-1601, p. 7 (La.5/18/99), 733 So.2d 1198, 1204; Mundy v. Dep't of Health & Human Resources, 620 So.2d 811, 813 (La.1993); Faucheaux v. Terrebonne Consol. Gov't, 615 So.2d 289, 292 (La.1993). In deciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented. See Socorro v. City of New Orleans, 579 So.2d 931, 938 (La.1991). The court may consider various moral, social, and economic factors, including the fairness of imposing liability; the economic impact on the defendant and on similarly situated parties; the need for an incentive to prevent future harm; the nature of defendant's activity; the potential for an unmanageable flow of litigation; the historical development of precedent; and the direction in which society and its institutions are evolving. See Meany, 639 So.2d at 233; Pitre v. Opelousas Gen. Hosp., 530 So.2d 1151, 1161 (La. 1988); Entrevia v. Hood, 427 So.2d 1146, 1149 (La.1983).
752 So.2d at 766.
Concluding that it had never squarely addressed the issue of whether business *1120 owners owe a duty to protect their patrons from crimes perpetrated by third parties, the court held:
We now join other states in adopting the rule that although business owners are not the insurers of their patrons' safety, they do have a duty to implement reasonable measures to protect their patrons from criminal acts when those acts are foreseeable. We emphasize, however, that there is generally no duty to protect others from the criminal activities of third persons. See Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364, 1371 (La.1984). This duty only arises under limited circumstances, when the criminal act in question was reasonably foreseeable to the owner of the business. Determining when a crime is foreseeable is therefore a critical inquiry. was reasonably foreseeable to the owner of the business. Determining when a crime is foreseeable is therefore a critical inquiry.
752 So.2d at 766. Reviewing various approaches to resolve the issue of foreseeability, the court adopted a balancing test to determine whether a business owner owes a duty of care to protect its customers from the criminal acts of third parties. The court explained this test:
The foreseeability of the crime risk on the defendant's property and the gravity of the risk determine the existence and the extent of the defendant's duty. The greater the foreseeability and gravity of the harm, the greater the duty of care that will be imposed on the business. A very high degree of foreseeability is required to give rise to a duty to post security guards, but a lower degree of foreseeability may support a duty to implement lesser security measures such as using surveillance cameras, installing improved lighting or fencing, or trimming shrubbery. The plaintiff has the burden of establishing the duty the defendant owed under the circumstances.
752 So.2d at 768.
The court found that Sam's parking lot had a very low crime risk because only one other crime in the lot bore any similarity to the crime at issue, considering the large number of customers who used the lot. This and other factors led the court to conclude that the foreseeability and gravity of harm in Sam's parking lot remained slight. Consequently, the court concluded that Sam's owed no duty to protect the plaintiff from the criminal acts of third parties under the facts and circumstances of the case. Thus, the court did not reach the other elements of the duty-risk analysis that must be proven in establishing a negligence claim. 752 So.2d at 769.
Because we must use the same criteria as the trial court to determine whether summary judgment was appropriate, we must determine whether the casino owed a duty to protect Mr. Marmer from an attack by a third party in a restroom on the vessel. In support of its motion for summary judgment, the casino offered the affidavits of Ronald Decuir and Denary Antoine, and portions of Mr. Marmer's deposition.
Mr. Decuir, an assistant security supervisor at the casino and on duty when Mr. Marmer was attacked, stated in his affidavit that, other than an occasional altercation between patrons, the casino had experienced virtually no violent criminal activity on its premises; that none of the security officers aboard the casino had ever seen Mr. Lucas prior to the assault, and they had received no reports that he was acting in a suspicious or threatening manner; that seven security officers were working aboard the vessel during the day shift on April 7, 1996; that at least one security officer is assigned to each floor, one security officer is posted at the boarding *1121 structure, and the others are assigned as rovers, moving to different areas of the vessel; that during their shift, the security officers routinely make rounds through the gaming areas, restrooms, stairways and exterior decks to ensure the safety and security of the vessel; that prior to and subsequent to this incident, no one had ever been harassed, attacked or assaulted in the vessel's restrooms; and that the restrooms are frequently checked by the security department for potentially hazardous conditions and for safety reasons.
In his affidavit, Mr. Antoine, the casino's security supervisor in April 1996, stated that when a patron creates a disturbance aboard the vessel or is involved in an incident such that the management determines he should be permanently banned from the vessel, the patron's photograph is taken and placed in a file which is reviewed by the casino's security officers; that the security officer stationed on the boarding structure watches all patrons board the vessel to ensure that any patron who is banned is not allowed on board; that prior to April 7, 1996, the casino's security department had no knowledge of Mr. Lucas, no record of any prior disturbance involving him, and no reason to suspect that he posed a threat to the safety of passengers or employees aboard the vessel; that after this incident, a photograph of Mr. Lucas was placed in the security file, indicating that he was permanently banned from the vessel; that the wharf where the casino is berthed is patrolled by the Harbor Police, and the area surrounding the wharf is patrolled by the New Orleans Police Department; that in addition to the casino's security staff, both the adjacent Hilton Hotel and Riverwalk Mall have security departments; that as a result of this substantial law enforcement and security activity, criminal activity at the casino and the surrounding area is very minimal; that prior to and subsequent to the April 7, 1996 incident, there were no known or reported incidents of anyone being harassed, attacked or assaulted in the vessel's restrooms.
Mr. Marmer's deposition was not relevant to the issue of foreseeability, and he submitted no evidence in opposition to the casino's motion for summary judgment.
Critical to our review in this case is the following statement made in Posecai:
The foreseeability and gravity of the harm are to be determined by the facts and circumstances of the case. The most important factor to be considered is the existence, frequency and similarity of prior incidents of crime on the premises, but the location, nature and condition of the property should also be taken into account. It is highly unlikely that a crime risk will be sufficiently foreseeable for the imposition of a duty to provide security guards if there have not been previous instances of crime on the business' premises.
752 So.2d at 768. In this case, that there were no other instances of criminal activity in the vessel's restrooms and that the casino had experienced virtually no violent criminal activity on its premises were not disputed. It was also undisputed that the casino's security department and its security measures in place contributed greatly to the minimal occurrences of any criminal activity on the vessel and the surrounding area. Finally, the casino established that it had no reason to suspect that Mr. Lucas would cause harm to someone.
Mr. Marmer contends that a gambling establishment provides a fertile environment for criminal conduct such that same is reasonably foreseeable. We note that our courts have focused on the frequency and similarity of prior criminal acts on the premises, rather than the nature of the *1122 particular premises, in determining foreseeability. While the nature of the business conducted or the characteristics of the premises itself, under certain circumstances, may be relevant to the issue of foreseeability, a bare argument based on same, without more, will not suffice to establish a duty to protect patrols from the criminal acts of third parties.
The evidence submitted by the casino sufficiently identified the absence of factual support for the imposition of a duty owed by the casino to protect Mr. Marmer from the attack in the restroom. The burden of proof then shifted to him to produce factual support sufficient to establish that he would be able to satisfy his burden at trial to prove the existence of a duty owed by the casino. Mr. Marmer's argument did not satisfy this burden. He submitted no evidence in opposition to the casino's motion for summary judgment that would allow us to conclude that an attack upon him was foreseeable. As in Posecai, this finding concludes our review; consideration of whether the casino ignored Mr. Marmer's screams for help, again an unsupported allegation, is unwarranted because this question addresses the potential breach of duty. In this case, there was no duty to breach.
Mr. Marmer argues that the existence of a security force on the casino should be considered in the issue of foreseeability, an argument rejected by the court's statement in Posecai at footnote 7:
We reject the court of appeals' finding that Sam's assumed a duty to protect its patrons from crime when it hired a security officer to guard its cash office. This finding relies on an erroneous interpretation of our decision in Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984). Pizza Hut does not stand for the proposition that a business assumes the duty to protect its customers from the criminal acts of third persons merely because it undertakes some security measures. Rather, Pizza Hut was an ordinary negligence case, holding that a security guard employed by a business must exercise reasonable care for the safety of the business' patrons and breaches that duty when his actions cause an escalation in the risk of harm. In Pizza Hut, the restaurant's security guard was negligent because he heightened the risk of harm to Pizza Hut's customers by provoking gunfire from armed robbers who had entered the restaurant.
752 So.2d at 769. Similarly, in Bonds v. Abbeville General Hospital, 00-1462 (La. App. 3 Cir. 4/4/01), 782 So.2d 1188, the court found that a hospital did not owe a duty to an employee to protect her from a criminal act in the hospital's parking lot. The employee arrived at work and was accosted by a man who held a gun to her, forced her back into her car, and directed her to drive to a deserted area where he beat and raped her. Unlike the instant case, the plaintiff in Bonds submitted an affidavit from an expert examining the foreseeability of a violent attack on the hospital's employees.[3] Following the Posecai decision, the court in Bonds discussed the significance of the hospital's decision to contract with a security firm to have a guard on duty in the parking lot.
In this case, it is undisputed that there have been no other instances of crimes in the Hospital parking lot. Further, a security guard was present. *1123 Therefore, we find that the evidence of record does not support the conclusion that the Hospital could have reasonably foreseen the attack on Ms. Bonds, given the precautions against crime it had taken. Even if a crime were foreseeable, the hospital had already implemented the safeguard recommended by the supreme court for those cases where the risk of the occurrence of a crime is highly likely, that is the employment of a security guard. Accordingly, record does not support a finding that the Hospital owed a duty to Ms. Bonds to protect her from this sort of attack under the circumstances of this case.
782 So.2d at 1192; p. 4.
Because the record does not support a finding that the casino owed a duty to protect Mr. Marmer from the criminal attack he allegedly experienced, the trial court did not err in granting the casino's motion for summary judgment. The judgment of the trial court is affirmed. The casino's motion to strike the exhibits attached to Mr. Marmer's reply brief is granted.
AFFIRMED.
NOTES
[1] Apparently, Mr. Marmer has not pursued his action against Mr. Lucas.
[2] Neither hearing on the casino's motions for summary judgment is included in the record on appeal.
[3] This evidence may have helped the court in Bonds to conclude that summary judgment in favor of the security company was properly denied because of the existence of material facts regarding whether the security company breached its duty to provide adequate security under its contract with the hospital when the security guard left his post at the time of the incident in question.