# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 07-538
### consolidated with 07-692

ELIZABETH HIGGINBOTHAM, AND
CYNTHIA MARIE KUHLMANN, INDIVIDUALLY
AND ON BEHALF OF HER MINOR SON,
DUSTIN ALEXANDER KUHLMANN

VERSUS

THE RAPIDES FOUNDATION D/B/A
RAPIDES REGIONAL MEDICAL CENTER,
JOSEPH WILTZ AND ABC INSURANCE COMPANY

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, DOCKET NO. 208,571 -- DIVISION D
HONORABLE JOHN C. DAVIDSON, DISTRICT JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of Marc T. Amy, Michael G. Sullivan, and James T. Genovese, Judges.

AFFIRMED.

Leonard M. Berins
Gerald Wasserman
Bach & Wasserman
3939 North Causeway Boulevard, Suite 200
Metairie, Louisiana 70002
(504) 846-5700
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Elizabeth Higginbotham and Cynthia Marie Kuhlman, individually
    and on behalf of her minor son, Dustin Alexander Kuhlman

**Randall M. Seeser**
**Brandon A. Sues**
**Gold, Weems, Bruser, Sues & Rundell**
**2001 MacArthur Drive**
**Post Office Box 6118**
**Alexandria, Louisiana  71307-6118**
**(318) 445-6471**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Rapides Healthcare System, L.L.C., d/b/a Rapides Regional Medical Center and Health Care Indemnity, Inc.**

**GENOVESE, Judge.**

Plaintiffs, Elizabeth Higginbotham and Cynthia Marie Kuhlmann, individually and on behalf of her minor son, Dustin Alexander Kuhlmann, appeal the trial court's dismissal of their claims against Defendants, Rapides Healthcare System, L.L.C., doing business as Rapides Regional Medical Center (Rapides), and its liability insurer, Health Care Indemnity, Inc. (Health Care), pursuant to summary judgment. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On August 19, 2001, Plaintiff, Elizabeth Higginbotham (Ms. Higginbotham), went to Rapides to visit her daughter, Cynthia Kuhlmann (Mrs. Kuhlmann), who was in the hospital following childbirth. Upon arrival, Ms. Higginbotham parked her vehicle at the corner of Fifth Street and Scott Street in Alexandria, Louisiana. After the visit, Ms. Higginbotham left the hospital accompanied by her two-year-old grandson, Dustin Kuhlmann. While in the process of loading her grandson into the back seat of her automobile, Ms. Higginbotham was mugged by Defendant, Joseph Wiltz (Wiltz). According to Ms. Higginbotham, Wiltz approached her from behind as she was leaning into her back seat, forcefully wrestled her grandson's duffle bag from her, and ran away with the bag. Shortly thereafter, Wiltz was apprehended and arrested by the Alexandria city police.

On April 26, 2002, Plaintiffs filed suit against Rapides, its liability insurer, Health Care, and Wiltz. Plaintiffs' petition alleges: (1) that the attack aggravated Ms. Higginbotham's "previously repaired spinal injury at the C6-7 level and [caused] a new injury at C4-5 and C5-6" which ultimately had to be treated through surgery; (2) that Dustin Kuhlmann suffered mental anguish and emotional distress as a result of

1

witnessing the attack on his grandmother; and (3) that Mrs. Kuhlmann, who "was informed of the incident immediately after it occurred and while she was still a maternity patient[,]" suffered "shock and emotional trauma caused [to] her as a result of witnessing the mental anguish of both her mother and son" which "exacerbated the mental and physical stress normally attendant with the birthing process." Plaintiffs asserted that Rapides was negligent in failing to safeguard Ms. Higginbotham and her grandson from known criminal activity around its premises and that Health Care was liable for Rapides's negligence in accordance with its liability insurance policy insuring Rapides against such a claim.

On September 8, 2006, Rapides filed a motion for summary judgment asserting that it did not own, maintain, patrol, or secure either Fifth Street or Scott Street, the city streets where the mugging occurred. Rapides further asserted that it did not owe a legal duty to protect Plaintiffs against a random and unforeseen criminal incident by an unknown third party occurring on a public or city street. In support of its motion for summary judgment, Rapides attached as exhibits: (1) excerpts of the deposition of Ms. Higginbotham; (2) the affidavit of Kevin Johnson, Rapides's Director of Engineering and Construction Services; (3) excerpts of the deposition of Brian Jones, a hospital security supervisor; and (4) excerpts of the deposition of George Sanders, a hospital security officer.

A hearing on Rapides's motion for summary judgment was originally set for October 23, 2006. However, *Plaintiffs* sought and were granted a continuance; the hearing was reset for December 18, 2006. Plaintiffs served their memorandum in opposition and opposing exhibits upon Rapides on Friday, December 15, 2006, less than three days before the scheduled hearing on Monday, December 18, 2006.

Rapides objected to and moved to strike Plaintiffs' untimely served and filed opposition and opposing exhibits. On December 18, 2006, prior to the hearing on Rapides's motion for summary judgment, Plaintiffs requested a second continuance in an effort to timely file an opposition; however, the trial court denied Plaintiffs' request. Instead, Rapides's motion to strike was granted, and Plaintiffs were barred from filing an opposition and arguing on the basis that their opposition was untimely.

On January 5, 2007, the trial court issued written reasons for judgment concluding that Rapides owed no legal duty to Plaintiffs in this matter. On the same day, the trial court signed the judgment granting Rapides's motion for summary judgment, thereby dismissing Plaintiffs' action, with prejudice, against Rapides. Plaintiffs' motion for devolutive appeal was granted by the trial court on February 8, 2007.[1]

On February 2, 2007, Health Care filed a motion for summary judgment asserting that it was also entitled to a dismissal of Plaintiffs' action, with prejudice, as a result of its insured, Rapides, being previously relieved of any liability in this matter. In support of its motion for summary judgment, Health Care attached as exhibits: (1) Plaintiffs' first supplemental and amending petition; (2) its answer to Plaintiffs' first supplemental and amending petition; (3) the trial court's written reasons for judgment dated January 5, 2007; and (4) the trial court's judgment signed on January 5, 2007.

In their opposition to Health Care's motion, Plaintiffs argued:

[P]ending the outcome of the appeal of the [s]ummary [j]udgment granted in favor of the hospital, it would be unfair and unjust to dismiss Health Care . . . on the grounds that the trial court has already dismissed its insured. Until the appeal process is complete, there can be no final

---

[1]This judgment is on appeal under docket number 07-538.

3

determination as to whether or not this [c]ourt was correct in granting [Rapides's] [m]otion for [s]ummary [j]udgment, and it would be inappropriate to base the dismissal of [Rapides's] insured on the basis of a [j]udgment upon which the Appellate Court has yet to rule.

Plaintiffs also offered as opposing exhibits: (1) the deposition of Ms. Higginbotham; (2) the deposition of Brian Jones; (3) the deposition of George Sanders; (4) the deposition of Nolan French; and (5) eleven reports from the Alexandria Police Department.

A hearing was held on Health Care's motion for summary judgment on March 26, 2007. On March 30, 2007, the trial court issued written reasons for judgment wherein it concluded that Health Care could not be liable for claims against Rapides when Rapides had been relieved of liability in the case. On April 30, 2007, the trial court granted Plaintiffs' motion for devolutive appeal.[2]

## ASSIGNMENTS OF ERROR

Plaintiffs assert, in both of their appeals before this court, that:

1.  The trial court erred in striking and not considering Plaintiffs' memorandum in opposition and opposition exhibits to the Defendant's motion for summary judgment.

2.  The trial court erred in excluding the police reports from evidence as inadmissible hearsay.

3.  The trial court erred in not [sic] finding that there were no material issues as to fact and that, as a matter of law, a summary judgment should be granted in favor of [D]efendant.[3]

4.  The trial court erred in granting summary judgment in favor of Health Care unless and until such judgment was rendered final on appeal.[4]

---

[2]This judgment is on appeal under docket number 07-692. Docket numbers 07-538 and 07-692 have been consolidated for purposes of this appeal.

[3]These assignments of error are raised in 07-538.

[4]This assignment of error is raised in 07-692.

4

**STANDARD OF REVIEW**

This court "must review summary judgments *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law." *Supreme Servs. & Specialty Co., Inc. v. Sonny Greer, Inc.*, 06-1827, p. 4 (La. 5/22/07), 958 So.2d 634, 638 (citing *Champagne v. Ward*, 03-3211 (La. 1/19/05), 893 So.2d 773). Accordingly, we must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B).

> The burden of showing that there are no genuine issues of material fact is borne by the mover. La.Code Civ.P. art. 966(C)(2). To satisfy this burden, the mover must present supportive evidence that the motion should be granted. Once the mover establishes a prima facie showing, the burden of production shifts to the nonmoving party to present evidence of the existence of issues of material fact which preclude summary judgment. An adverse party may not rest on the pleadings but must set forth, by affidavit or otherwise, specific facts showing that there is a genuine issue for trial. La.Code Civ.P. art. 967.

*Colson v. Johnson*, 01-967, pp. 1-2 (La.App. 3 Cir. 12/12/01), 801 So.2d 648, 650, *writ denied*, 02-103 (La. 3/22/02), 811 So.2d 939 (quoting *Mercury Cellular Tel. Co. v. Calcasieu Parish of La.*, 00-318, p. 4 (La.App. 3 Cir. 12/13/00), 773 So.2d 914, 917, *writ denied*, 01-126 (La. 3/16/01), 787 So.2d 314).

**DISCUSSION**

*Timeliness of Opposition*

In their first two assignments of error, Plaintiffs argue that the trial court erred in striking their memorandum in opposition and opposing exhibits to Rapides's

5

motion for summary judgment. We disagree. Rapides filed its motion for summary judgment on September 8, 2006. The trial court originally set this matter for hearing on October 23, 2006. Pursuant to *Plaintiffs'* request on October 17, 2006, the trial court granted a continuance and reset the hearing for Monday, December 18, 2006. Not until Friday, December 15, 2006, did Plaintiffs serve Rapides with a copy of their memorandum in opposition and opposing exhibits. At the December 18, 2006 hearing, Rapides objected to and moved to strike Plaintiffs' opposition and opposing exhibits on the basis that it was filed only three days prior to the hearing on the summary judgment, not the eight days required by La.Code Civ.P. art. 966(B). Plaintiffs requested another continuance. The trial court granted Rapides's motion to strike Plaintiffs' opposition and denied Plaintiffs' motion for continuance.

Louisiana Code of Civil Procedure Article 966(B) (emphasis added) provides, in pertinent part:

> The motion for summary judgment and supporting affidavits shall be served at least fifteen days before the time specified for the hearing. For good cause, the court shall give the adverse party additional time to file a response, including opposing affidavits or depositions. *The adverse party may serve opposing affidavits, and if such opposing affidavits are served, the opposing affidavits and any memorandum in support thereof shall be served pursuant to Article 1313 at least eight days prior to the date of the hearing* unless the Rules for Louisiana District Courts provide to the contrary.

Uniform Rules of the District Courts Rule 9.9 (emphasis added) further provides, in pertinent part:

> (b) A party who opposes an exception or motion must concurrently furnish the trial judge and serve on all other parties an opposition memorandum *at least eight calendar days before the scheduled hearing*. The opposition memorandum must be served on all other parties so that it is received by the other parties at least eight calendar days before the hearing, unless the court sets a shorter time.
>
>     . . . .

6

(d) *Parties who fail to comply with paragraphs (a) and (b) of this rule may forfeit the privilege of oral argument.* If a party fails to timely serve a memorandum, thus necessitating a continuance to give the opposing side a fair chance to respond, the court may order the late-filing party to pay the opposing side's costs incurred on account of untimeliness.

Finally, the Louisiana Supreme Court has declared:

The time limitation established by [La.Code Civ.P. art.] 966(B) for the serving of affidavits in opposition to a motion for summary judgment is mandatory; affidavits not timely filed can be ruled inadmissible and properly excluded by the trial court. *See American Bank & Trust Company v. International Development Corporation, Inc.*, 506 So.2d 1234, 1235-36 (La.App. 1 Cir.1987).

*Buggage v. Volks Constructors*, 06-175, p. 1 (La. 5/5/06), 928 So.2d 536, 536.

It is clear in this case that Plaintiffs filed their opposition to Rapides's motion for summary judgment three days prior to a hearing on the matter and that the hearing had already been continued once at the request of Plaintiffs. Thus, the filing was clearly not timely under either La.Code Civ.P. art. 966(B) or Uniform Rules of the District Courts Rule 9.9. Given the facts, the law, and Plaintiffs' lack of due diligence, we find no abuse of discretion by the trial court in excluding Plaintiffs' opposition.

***Duty***

The trial court ruled that Rapides did not owe a duty to the Plaintiffs. In its written reasons for judgment, the trial court declared:

The [c]ourt was not presented with any evidence suggesting that it was foreseeable that such an incident would occur in the time, place, and manner in which this incident occurred. The [c]ourt finds that Rapides owed no legal duty to protect Ms. Higginbotham from the unforeseeable, intentional act of a third person. "A business's duty to take reasonable care for the safety of its patrons does not extend to unforeseeable or unanticipated criminal acts of independent third persons." *Vail v. Masker*, 01-1443, p. 3 (La.App. 4 Cir. 3/6/02)[,] 812 So.2d 807, 809.

Plaintiffs assert that the trial court erred in finding that Rapides owed no duty to protect Ms. Higginbotham and her grandson from this mugging. The supreme court in *Davis v. Witt*, 02-3102, pp. 10-11 (La. 7/2/03), 851 So.2d 1119, 1127, discussed the method by which a court must determine whether liability exists:

> The standard negligence analysis we employ in determining whether to impose liability under [La.Civ.Code] art. 2315 is the duty/risk analysis, which consists of the following four-prong inquiry: (1) Was the conduct in question a substantial factor in bringing about the harm to the plaintiff, i.e., was it a cause-in-fact of the harm which occurred? (2) Did the defendant(s) owe a duty to the plaintiff? (3) Was the duty breached? (4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached? *Mathieu v. Imperial Toy Corp.*, 94-0952 (La.11/30/94), 646 So.2d 318, 321-22.
>
> Under a duty/risk analysis, all four inquiries must be affirmatively answered for plaintiff to recover. As such, in order for liability to attach under a duty/risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element). *See Roberts v. Benoit*, 605 So.2d 1032 (La.1991), *on rehearing*, 605 So.2d 1050, 1051 (La.1991).

The question of whether a duty exists is a question of law. *Bonds v. Abbeville Gen. Hosp.*, 00-1462 (La.App. 3 Cir. 4/4/01), 782 So.2d 1188. Similarly, the question of whether a particular risk is included within the scope of a particular duty is a legal issue to be resolved by the court. *Id*.

Using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, we must determine whether Rapides owed a duty to protect Ms. Higgibotham from a criminal attack by third parties under the facts of this case.

8

Business owners have a duty to implement reasonable measures to protect their patrons from criminal acts when those acts are foreseeable. *Id.,* (citing *Posecai v. Wal-Mart Stores, Inc.*, 99-1222 (La. 11/30/99), 752 So.2d 762). The supreme court has established a balancing test to determine foreseeability, stating:

> The foreseeability of the crime risk on the defendant's property and the gravity of the risk determine the existence and the extent of the defendant's duty. The greater the foreseeability and gravity of the harm, the greater the duty of care that will be imposed on the business. A very high degree of foreseeability is required to give rise to a duty to post security guards, but a lower degree of foreseeability may support a duty to implement lesser security measures such as using surveillance cameras, installing improved lighting or fencing, or trimming shrubbery. The plaintiff has the burden of establishing the duty the defendant owed under the circumstances.

*Id.*, 782 So.2d at 1192 (quoting *Posecai*, 752 So.2d at 768).

The deposition testimony of Ms. Higginbotham indicates that the incident occurred *in the city street*, on the corner of Fifth Street and Scott Street. Although Plaintiffs contend that Rapides's owed a duty to protect Ms. Higginbotham due to foreseeable criminal activity, Ms. Higginbotham testified that she was unaware of any other attacks on or near Rapides's property. It is noteworthy that Ms. Higginbotham had been employed at a gift shop within the hospital from March 2001 until April 2001, just four months prior to her August 19, 2001 mugging and was, therefore, familiar with the hospital and its environs.

In his deposition, Brian Jones, a hospital security advisor, swore that he was unaware of any criminal incidents or offenses against persons such as robbery, theft, assault, battery, or rape, occurring on the hospital property for one year prior to Ms. Higginbotham's mugging. He also testified that he patrolled near the general area of Ms. Higginbotham's mugging approximately fifteen to twenty minutes before the

9

incident, and he did not see any suspicious criminal activity on his routine security patrol.

In his affidavit, Kevin Johnson, Director of Engineering and Construction Services, swore that Rapides did not own, maintain, secure, or patrol the public or city streets known as Fifth Street and Scott Street in Alexandria. Likewise, George Sanders, a hospital security officer, testified in his deposition that Rapides did not patrol or secure the city streets.

Considering the evidence properly presented before this court, we find no legal basis on which to conclude that Rapides could have reasonably foreseen the attack on Ms. Higginbotham. The record does not support a finding that Rapides owed a duty to Ms. Higginbotham to protect her from this sort of attack under the factual circumstances of this case. Therefore, we find no legal error in the trial court's ruling that in this scenario, Rapides had no legal duty to provide protection to Ms. Higginbotham from random and unforeseen criminal activity by an unknown third party occurring on a public street.

Finally, we also find no legal error in the trial court's decision to grant Health Care's motion for summary judgment. Health Care's motion for summary judgment was solely related to its liability as the insurer of the hospital. Said summary judgment was not directed to the rehashing of the issue of liability which had been previously addressed in the prior motion for summary judgment. Plaintiffs' introduction of affidavits, depositions, and inadmissible police reports are impertinent and immaterial to the issue of the insurer's liability when the insured has been relieved of liability. As accurately articulated by the trial court, "a liability insurer

cannot be liable for claims against its insured when the insured itself is relieved of liability. *Foster v. Hampton*, 352 So.2d 197[] (La.1977)."

## DECREE

For the foregoing reasons, the summary judgments of the trial court are affirmed. Costs of these appeals are assessed against Plaintiffs/Appellants, Elizabeth Higginbotham and Cynthia Marie Kuhlmann, individually and on behalf of her minor son, Dustin Alexander Kuhlmann.

**AFFIRMED.**