ALVIS O. THOMAS, Guardian ad Litem for WENDY
SUE THOMAS and ALVIS O. THOMAS, IV, Minors,
and ALVIS O. THOMAS, Individually, Appellants,
v. WILLIAM BOKELMAN and WILLIE BOKEL-
MAN, Respondents.

No. 5875

January 6, 1970                         462 P.2d 1020

*Bradley & Drendel,* of Reno, for Appellants.

*Leslie A. Leggett,* of Reno, for Respondents.

## OPINION

By the Court, ZENOFF, J.:

In 1955 Jack Summers was convicted of rape and sent to prison. He was released in 1968 having served his time. Summers v. Warden, 84 Nev. 326, 440 P.2d 388 (1968). He lived in Reno for about two months with the Bokelmans, who were relatives, but finally Bokelman, Summers' half-brother, was unable to any longer support him and asked him to leave. At no time during his stay at the Bokelman residence was there any discord or concern about Summers' conduct. Although two teenage girls lived with the Bokelmans as foster daughters, the early concern over their safety in view of Summers' history of the rape incident was dispelled by his compatibility and blending in with the family life.

The Bokelmans and Thomases were friends and visited each other frequently, particularly Mrs. Thomas. On one occasion Summers, Mrs. Thomas, Mrs. Bokelman and her father attended a roller derby together with the knowledge of Mr. Thomas.

Bokelman, who hunted for recreation, owned two rifles and also had in his possession a small rifle which he had borrowed from his father-in-law. The weapons were kept in his bedroom closet which was unlocked. The shells for the larger rifles were on a closet shelf and the shells for the small rifle were in the nightstand by his bed. On one occasion Summers saw the guns when Bokelman showed them to a friend who was visiting.

On July 3 Bokelman asked Summers to leave. Apparently the request was taken in good humor by Summers who had told Mrs. Bokelman that he would go to the state of Washington to look for a job. When the Bokelmans returned to their home later in the day Summers and all of his belongings were gone. However, there is no evidence to show that either Mr. or Mrs. Thomas knew of Summers leaving. Mr. Thomas never met Summers but did know of his past record and that he was staying at the Bokelmans.

On July 8 Mrs. Bokelman had planned a birthday party for Mrs. Thomas's daughter. She left her house at 9:00 a.m. and

stayed at the Thomas's house until 12:00 noon. She called her house at noon to see if her younger foster daughter was home but no one answered. At about noon the two women and two children drove to the Bokelman household. As they drove into the driveway Mrs. Thomas said she saw someone walk past the window, but Mrs. Bokelman mentioned that she had called earlier and no one had been home. When the two women entered the house they found a note from the younger girl saying she was downtown. Mrs. Bokelman heard some shots and saw Mrs. Thomas fall. Mrs. Bokelman was also shot. Mrs. Bokelman only saw the back of the man's shirt who did the shooting and saw the car leave the driveway. Later Summers was apprehended, charged and convicted of the murder of Mrs. Thomas.

Mr. Thomas for himself and their minor children brought this action for wrongful death alleging that the Bokelmans were negligent in leaving an unlocked gun around an ex-convict with vicious propensities and that their negligence was the proximate cause of Mrs. Thomas's death. Default judgment was entered against Summers. The trial court granted summary judgment dismissing the action. For reversal Thomas contends (1) that the act of leaving firearms and ammunition accessible to a man once convicted of forcible rape and residing on the premises constitutes actionable negligence, and (2) that the intervening criminal act of a person known to have a violent criminal personality does not prevent the asserted negligence of the Bokelmans who made it possible for him to commit such criminal act from being the proximate cause of the killing of the victim and, finally (3) that summary judgment was not a proper disposition of this action.

1.   The Thomas complaint is based upon the allegation that as the possessors of firearms and ammunition the Bokelmans failed to exercise that degree of care commensurate with the risk that such possession entailed. They seek to base liability upon the inherently dangerous character of the instruments, the firearms, together with the risk of the keeping of firearms in the proximity of an ex-felon who had 13 years before been convicted for an act of rape.

The degree of care owed by the Bokelmans to the legal status of the victim, whether as a licensee or as an invitee, is not in issue. Nor is the reference to cases in which the factual pattern involving a shooting by children to whom firearms were dangerously left available, germane. Those latter instances are largely governed by the control or supervision that parents

have over their children which, in turn, imposes liability for their acts. It cannot be said that the Bokelmans had supervision or control over 35-year-old Summers.

2.  Negligence is not actionable unless, without the intervention of an intervening cause, it proximately causes the harm for which complaint was made. An intervening cause means not a concurrent and contributing cause but a superseding cause which is itself the natural and logical cause of the harm. Segerman v. Jones, 38 U.S.L.W. 2347 (Md.App. Dec. 9, 1969).

Mrs. Thomas may not have been aware of the guns in Bokelman's home, but she did know of Summers' past record and character of the crime he had committed. Still, no reason appears for anyone in the household to foresee or anticipate Summers' presence with a gun. The risk, if any, was that Summers might again rape someone. His history is not one that involved weapons and the social relationship that had prevailed precluded any present fear of an evil disposition. A defendant who could not foresee any danger from an intervening force is not negligent. Sitarek v. Montgomery, 203 P.2d 1062 (Wash. 1949); Fulfer v. Sherry's Liquor Stores, 149 P.2d 734 (Cal.App. 1944). Appellants rely upon Underwood v. United States, 356 F.2d 92 (5th Cir. 1966), but there the well-known history of the emotional instability of the soldier who shot his wife was the predicate for anticipating that he would do so because with the knowledge that the soldier was bent on harming his wife he was permitted to obtain a weapon. There is a duty to take affirmative action to control the wrongful acts of third persons only where the occupant of realty has reasonable cause to anticipate such act and the probability of injury resulting therefrom. Young v. Desert View Management Corp., 79 Cal.Rptr. 848, 850 (Cal.App. 1969); Di Gildo v. Caponi, 247 N.E.2d 732, 735 (Ohio 1969).

3.  The courts are reluctant to grant summary judgment in negligence cases because foreseeability, duty, proximate cause and reasonableness usually are questions of fact for the jury. Berrum v. Powalisz, 73 Nev. 291, 293, 317 P.2d 1090 (1957). But when plaintiff as a matter of law cannot recover, defendant is entitled to a summary judgment. Young v. Desert View Management Corp., supra (judgment of nonsuit entered following an opening statement made to the jury by plaintiff's

attorney). The rule is well-settled that the opposing party is not entitled to have the motion for summary judgment denied on the mere hope that at trial he will be able to discredit movant's evidence; he must at the hearing be able to point out to the court something indicating the existence of a triable issue of fact. 6 Moore's Federal Practice, § 56.15(4) at 2142. The opponent is required to set forth specific facts showing that there is a genuine issue for trial. Bufalino v. Michigan Bell Telephone Co., 404 F.2d 1023 (6th Cir. 1968); Applegate v. Top Associates, Inc., 300 F.Supp. 51 (S.D.N.Y. 1969). Taking into consideration that inferences will be drawn in favor of the party opposing the motion the opponent must nevertheless show he can produce evidence at the trial to support his claim. Chapman v. Rudd Paint & Varnish Co., 409 F.2d 635, 643 (9th Cir. 1969); cf. Dyer v. MacDougall, 201 F.2d 265 (2nd Cir. 1952).

Nothing appears to indicate from this record that more facts could be established that would alter the factual situation as already stated. Therefore, as a matter of law the appellant cannot recover. We can find no actionable issue for the jury. The summary judgment was proper.

Affirmed.

COLLINS, C. J., BATJER, MOWBRAY, and THOMPSON, JJ., concur.