BEVERLY W. EARLY AND FRANK C. EARLY, APPELLANTS, *v.* N.L.V. CASINO CORPORATION, DBA SILVER NUGGET CASINO, RESPONDENT.

No. 14463

March 30, 1984                                    678 P.2d 683

*Skupa & Mainor,* Las Vegas, for Appellants.

*Cromer, Barker, Michaelson, Gillock & Rawlings,* and *Walter R. Cannon,* Las Vegas, for Respondent.

*James Crockett,* Las Vegas, for Nevada Trial Lawyers' Association, Amicus Brief Committee.

## OPINION

*Per Curiam:*

After presentation of appellants' negligence case before a jury, respondent N.L.V. Casino Corporation, dba Silver Nugget Casino, made a motion for dismissal under NRCP 41(b). The district court granted respondent's motion and issued an order and judgment of dismissal. Appellants then filed a motion for a new trial, which was dismissed. Appellants now appeal the 41(b) dismissal and the denial of a new trial. For reasons set forth hereinafter, the judgment of dismissal is reversed and the case is remanded for a new trial.

Appellants Beverly W. and Frank C. Early, along with their daugther, went to the Silver Nugget Casino for lunch. Before entering the restaurant, Mrs. Early excused herself to go to the restroom. While alone in the restroom, Mrs. Early was robbed

and severely beaten by a male assailant. Mr. Early and his daughter heard a scream and ran to the restroom area. The daughter followed further screams and found her mother getting up off the floor. Her mother's face "looked like it had been ripped completely open." Her clothing was also torn. After several requests by Mrs. Early, her daugther and a bystander, an ambulance was called. When it arrived, Mrs. Early was taken to the hospital. As a result of the beating, Mrs. Early suffered psychological trauma in addition to her physical injuries.

Three of the Silver Nugget's security guards, including the chief of security, testified concerning security measures in effect at the Silver Nugget. According to the testimony, there were no formal training sessions for security guards, no written materials on security or security manuals, and few, if any, formal staff meetings. At least on occasion there were no guards patrolling outside the Silver Nugget at night for up to four hours at a time. Guards also had neither an elevated security desk in a prominent position within the casino nor access to the closed circuit television monitors.

The chief of security felt that the guards at the Silver Nugget were glorified porters, because they "never really did a lot of security work." Instead, they carried money boxes to and from the counting room, read bingo machine numbers and oversaw the changing of tape in Keno machines. The chief of security was also aware of monthly security chiefs' meetings in town, but was unable to attend because there were not enough guards to cover the casino if he left. The security guards' logbook lists ninety-two crimes known to have been committed on the premises of the Silver Nugget during the two years preceding Mrs. Early's beating. None of those prior crimes, however, had been committed in a restroom.

Expert witnesses testified that almost every other casino in town had training programs for guards and elevated security desks. One witness also testified that during the two or three years prior to the incident in question, restroom crimes and remedies had been discussed at almost every monthly meeting of the local security chiefs.

NRCP 41(b) provides that an action may be dismissed at the close of plaintiff's case "on the ground that upon the facts and the law the plaintiff has failed to prove a sufficient case for the . . . jury." It is well-settled that a motion for involuntary dismissal pursuant to NRCP 41(b) "admits the truth of plaintiff's evidence and all inferences that reasonably can be drawn therefrom, and the evidence must be interpreted in the light most favorable to plaintiff." Bell v. Machado, 98 Nev. 152, 153, 643

P.2d 1208, 1209 (1982). In other words, if the evidence presented in the instant case provides a reasonable inference of actionable negligence, involuntary dismissal is inappropriate.

Appellants, therefore, "bore the burden of introducing sufficient evidence in [their] case-in-chief to establish a prima facie case." Hernandez v. City of Reno, 97 Nev. 429, 433, 634 P.2d 668, 671 (1981). The first element of appellants' negligence case concerns whether the Silver Nugget owed any duty to Mrs. Early. Both parties agree that the duty owed to an invitee such as a casino patron is to use reasonable and ordinary care in keeping the premises safe for the benefit of patrons. "[A] proprietor owes his invited guests a duty to keep the premises in a reasonable safe condition for use—the duty of ordinary care." Asmussen v. New Golden Hotel Company, 80 Nev. 260, 262, 392 P.2d 49, 49 (1964). It is generally acknowledged, however, that the proprietor's duty to protect an invited guest from injury caused by a third person is circumscribed by the reasonable foreseeability of the third person's actions and the injuries resulting from the condition or circumstances which facilitated the harm. We have stated that: "There is a duty to take affirmative action to control the wrongful acts of third persons only where the occupant of realty has reasonable cause to anticipate such act and the probability of injury resulting therefrom." Thomas v. Bokelman, 86 Nev. 10, 13, 462 P.2d 1020, 1022 (1970). Regarding foreseeability, the *Restatement of Torts* provides:

> Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the *place or character of his business, or his past experience,* is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

*Restatement (Second) of Torts* § 344 comment f (1965) (emphasis added).

In the instant case, appellants' evidence relating to past crimes on the premises and to the location and character of the Silver Nugget's business could provide the requisite foreseeability. Indeed, a gambling casino where cash and liquor are constantly flowing may provide a fertile environment for criminal conduct such as robbery and assault. Such crimes are most likely to occur, moreover, in areas such as restrooms, which are removed from the protection offered by crowds. Arguably security measures should take these factors into account. "[T]he standard of care required is always the conduct of an ordinarily prudent person, nevertheless, the standard of conduct required is graduated according to the danger attendant upon the activities of the business pursued and depends upon the facts and circumstances surrounding each particular case." Brewer v. Roosevelt Motor Lodge, 295 A.2d 647, 652 (Me. 1972) (no liability as the only prior criminal activity was an unrelated incident). The United States District Court for Nevada recently held that a hotel casino patron robbed in an elevator was entitled to protection when the hotel had reasonable cause to anticipate such a criminal act and the probability of injury arising therefrom; the reasonableness of the hotel's efforts to discharge its duty to control foreseeable wrongful conduct was determined to be an issue that should go to the jury. Morrison v. MGM Grand Hotel, 570 F.Supp. 1449 (D. Nev. 1983).[1]

The second element appellants must satisfy in proving a prima facie negligence case centers on whether the Silver Nugget breached its duty to provide a reasonably safe environment for Mrs. Early, a patron. Appellants specifically suggest that reasonable measures of protection should include: minimally trained security guards, access to closed circuit monitors for security personnel, adequate numbers of security personnel to cover inside and outside areas, duties for security personnel that relate primarily to security, and attendance by a security representative at local security chiefs' meetings. We have determined that a jury could reasonably infer from appellants' evidence, interpreted in its most favorable light, that security measures employed by the Silver Nugget did not satisfy its duty to provide reasonable safety for patrons.

Finally, appellants must prove that their injuries were proximately caused by the Silver Nugget's breach of duty. Our review of the record supports our conclusion that a jury could

---

[1]Although foreseeability in *Morrison* was based on a prior elevator robbery, we conclude that the facts in the instant case, even without a prior bathroom assault, provide sufficient foreseeability to overcome an involuntary dismissal.

reasonably infer from appellants' evidence that Mrs. Early's injuries were a proximate result of a breach of duty by the Silver Nugget.

We have determined that the district court's order granting an involuntary dismissal must be reversed, and we accordingly remand this matter for a new trial consistent with this opinion.