GEORGE DAKIS AS GUARDIAN AD LITEM FOR ERICA DAKIS, A MINOR, APPELLANT, *v.* RONALD SCHEFFER AND JOELLE SCHEFFER, RESPONDENTS.

No. 26028

June 27, 1995                                        898 P.2d 116

*Harrison, Kemp & Jones,* Las Vegas; *Mark W. Russell,* Las Vegas; *Ruocco, Saucedo & Corsiglia,* San Jose, California, for Appellant.

*Beckley, Singleton, Jemison & List* and *Daniel Polsenberg,* Las Vegas, for Respondents.

*Lyles, Austin & Burnett* and *John R. Hawley,* Las Vegas, for Amicus Curiae The National Rifle Association of America.

## OPINION

*Per Curiam:*

Erica Dakis was injured at the home of respondents when a third party, Scott Roberts (Roberts), picked up respondents' flare gun and unintentionally shot Erica with it, injuring her face and hand. Erica's guardian ad litem, George Dakis, filed suit against respondents Ronald Scheffer (Scheffer) and Joelle Scheffer (Joelle), as well as Roberts and another individual. Scheffer and Joelle moved for summary judgment, which the district court granted. Erica appeals.

Erica asserts that the district court erred because Roberts's actions were foreseeable and therefore not a supervening cause of her injuries. Scheffer and Joelle argue that Roberts's actions were a supervening cause of injury. We conclude that Erica raised a genuine issue of material fact as to the foreseeability of Roberts's actions and that summary judgment was not proper.

### FACTS

Most of the facts are not in dispute. Erica and Joelle are cousins. Erica was fifteen and Joelle nineteen years old at the time of the incident.

Scheffer lived in his home with his daughter Joelle and his girlfriend Diana Thomas (Thomas). Scheffer was worried about the prevalence of crime in his neighborhood and brought a flare gun into his house some weeks before the incident for protection. He loaded the flare gun and placed it, with the hammer uncocked, on an alcove shelf in the hallway between his and his daughter's bedrooms. The alcove was near a mirror and also held a hair dryer, brushes, and combs. The flare gun had no safety mechanism, but the hammer had to be cocked before the gun could be fired by pulling the trigger.

The day before the incident, Joelle took Erica to a rock concert

as a birthday gift. After the concert, they met two young men about twenty-one or twenty-two years old, Roberts and Chris or Milo (Chris) (last name unknown). Scheffer did not know these two men and heard nothing about them until after the incident.

The next day, May 7, 1992, Erica, Roberts, and Chris came to Joelle's house. Thomas was at home by the pool; Roberts and Chris were invited to stay for a swim. Erica and Joelle went into the house to prepare for dinner that night with Erica's mother to celebrate Erica's birthday. Roberts joined the two girls in the house. Joelle began to take a shower, and Erica changed her clothes and began brushing her hair in front of the mirror in the hallway. Erica then saw Roberts holding the flare gun, she held her hand up in front of her face, and the gun went off, hitting her. Erica's right cheek and right hand were injured, apparently by the wadding from the flare gun. After hearing the shot, Thomas came in from the pool, and Joelle came out from the shower. They were unable to call 911, so Joelle drove Erica to the hospital.

Roberts later told the police that he had been playing with the flare gun because it looked like a hair dryer and that he dropped it, causing it to discharge and hit Erica. The investigating officer was satisfied that the shooting was accidental.

Erica's guardian ad litem filed suit against Scheffer, Joelle, Thomas, and Roberts. Scheffer and Joelle moved for summary judgment, and the district court granted it. The court certified the judgment as a final judgment pursuant to NRCP 54(b). Evidently, Erica's claims against Thomas and Roberts are still pending.

## DISCUSSION

The overarching issue is whether the district court erred in granting Scheffer and Joelle summary judgment. A district court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." NRCP 56(c). "A litigant has the right to trial whenever the slightest doubt as to remaining issues of fact exists." Roy v. Lancaster, 107 Nev. 460, 462, 814 P.2d 75, 76 (1991).

As a preliminary matter, Scheffer and Joelle urge this court not to adopt the tort of "negligent safeguard" of a weapon. They argue that this tort applies to cases where adults allow a child to get hold of a gun, not to this case, where an adult caused the injury. In an amicus brief, the National Rifle Association (NRA) makes this same argument. Scheffer and Joelle also warn against adoption of a broad duty that "would require all gun owners to so secure their weapons as to render them ineffective for personal

security." They and the NRA also argue against a requirement that all gun owners inform visitors that there is a gun on the premises.

However, these issues do not require decision by this court. Erica's complaint alleges in pertinent part that respondents left "their flare gun in a location in the house easily accessible to invited guests and/or other persons. [The] flare gun was left in a loaded condition [and] in such a condition that it could be easily and quickly discharged." It further alleges that these acts constituted "gross negligence and wanton disregard for the safety of others." In her briefs to this court, Erica simply argues under general negligence principles that respondents did not act with reasonable care when they left the loaded flare gun lying out in the open. Therefore, in deciding this appeal, we see no need to consider, let alone adopt, a new tort, a higher than ordinary duty of care, or a blanket duty to safeguard weapons or warn visitors about them.

Foreseeability is the central issue of this case. "[T]he foreseeability of harm is a predicate to establishing the element of duty." Merluzzi v. Larson, 96 Nev. 409, 414, 610 P.2d 739, 742 (1980). "A negligent defendant is responsible for all foreseeable consequences proximately caused by his or her negligent act." Taylor v. Silva, 96 Nev. 738, 741, 615 P.2d 970, 971 (1980).

> [W]here an unforeseeable supervening cause intervenes between a defendant's negligence and a plaintiff's injury, the defendant is relieved of liability. However, where a third party's intervening intentional act is reasonably foreseeable, a negligent defendant is not relieved of liability. Further, the question of foreseeability is generally one for the jury.

El Dorado Hotel v. Brown, 100 Nev. 622, 628-29, 691 P.2d 436, 441 (1984) (citations omitted). Thus, as long as Erica offered admissible evidence showing that Roberts's action could have been reasonably foreseen by respondents, a genuine issue of material fact remained and summary judgment was not appropriate.

The record shows that Scheffer loaded the flare gun and placed it on an alcove shelf, accessible to anyone in the hallway of the house. The shelf also held a hair dryer, brushes, and combs. The flare gun had no safety mechanism, other than the necessity to pull the hammer back before the gun could be fired. Roberts stated that he mistook the flare gun for a hair dryer. Joelle invited Roberts into the home and knew he was near the alcove. Scheffer knew his niece, Erica, was visiting and could reasonably expect her and perhaps others to visit his house. Thomas, Scheffer's girlfriend, was uncomfortable when the flare gun was placed for a

short time underneath a bookcase by the front door of the house. Erica also notes that the investigating officer, an experienced police officer, did not initially identify the flare gun as such. Based on these facts, Erica argues that it was foreseeable that a visitor to the house might pick up the flare gun from among the cosmetic implements, not realize what it was, and accidentally discharge it, causing an injury.

Scheffer and Joelle argue that they did not know Roberts and had no reason to foresee that he would fool around with the flare gun and shoot Erica with it. They cite Thomas v. Bokelman, 86 Nev. 10, 462 P.2d 1020 (1970), for authority that the district court properly granted summary judgment here. The defendants in *Thomas* had left guns available in their home, and an ex-felon who formerly lived with them for a time used the guns to murder a visitor to the home. The district court granted summary judgment dismissing the action, and this court affirmed. This court concluded that the ex-felon's action was an intervening force which the defendants could not have foreseen because the ex-felon's prior conviction was for rape, his history never involved weapons, and his relationship with the defendants had been harmonious. *Id.* at 13, 462 P.2d at 1022.

*Thomas* is distinguishable from the instant case in two ways. First, the home and gun owner in *Thomas* kept his three rifles in an unlocked bedroom closet, unloaded with the shells nearby. *Id.* at 11, 462 P.2d at 1021. This means that the ex-felon had to go into the bedroom, open the closet, and load the weapons before they could be discharged. By contrast, the flare gun here was left loaded and lying in the open on a hallway shelf. Second, the ex-felon in *Thomas* was later convicted of murder, which means that he intentionally shot to death the visitor. *Id.* at 12, 462 P.2d at 1021. Here, Roberts picked up an already loaded flare gun and carelessly handled it, causing an injury. Such carelessness is more foreseeable than deliberate criminal conduct. *See* Romero v. National Rifle Ass'n of America, Inc., 749 F.2d 77, 79 (D.C. Cir. 1984) (when the intervening act involves criminal rather than negligent conduct by a third party, a greater degree of specificity in foreseeability is required for liability).

We conclude that Erica has raised a doubt as to the factual issue of the foreseeability of the third party's actions. Consequently, the district court erred in granting summary judgment and preventing her from presenting her case to a jury. We therefore reverse the summary judgment and remand this case to the district court for further proceedings.