COURT OF APPEALS OF VIRGINIA

Present:   Judges AtLee, Athey and Callins
Argued at Richmond, Virginia


GEORGIA M. POLLACK

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0295-24-2                  JUDGE CLIFFORD L. ATHEY, JR.
                                                         JULY 29, 2025

COLONIAL DOWNS GROUP, LLC, d/b/a
 ROSIE'S GAMING EMPORIUM


                FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                           Claire G. Cardwell, Judge

            William G. Shields (The Shields Law Firm, PLLC, on brief), for
            appellant.

            Daniel M. Royce (Barrett Enix; Kalbaugh, Pfund & Messersmith,
            P.C., on brief), for appellee.


        In April of 2023, Georgia M. Pollack ("Pollack") filed a personal injury complaint

against Richmond casino operator Colonial Downs Group, LLC, doing business as Rosie's

Gaming Emporium ("Rosie's"), in the Circuit Court of the City of Richmond ("circuit court").

The personal injury complaint alleged that Rosie's was liable for damages for failing to warn or

protect Pollack from injuries she received as a result of being assaulted in Rosie's parking lot.

On January 22, 2024, the circuit court sustained Rosie's demurrer to Pollack's complaint with

prejudice on the grounds that Pollack failed to allege sufficient facts in support of Rosie's having

a duty to warn or protect Pollack from being assaulted in Rosie's parking lot.  On appeal, Pollack

assigns error to the circuit court's order sustaining Rosie's demurrer, contending that the circuit

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

court erred by concluding that Rosie's did not have the duty to warn or protect Pollack from the assault. Finding no error, we affirm.

## I. BACKGROUND[1]

Rosie's is a casino located in the City of Richmond and regulated by the Gaming Commission of Virginia.[2] On December 30, 2022, Pollack, "an elderly lady who frequently gamble[d] at Rosie's," visited the casino to gamble once again. She parked in Rosie's parking lot at approximately 12:00 p.m. and proceeded to exit her car to walk into the casino. As she crossed the parking lot, she encountered Isham Davis ("Davis"), "a convicted murderer who was lurking in Rosie's parking lot." Davis "jumped her," "lung[ed]" at her, and grabbed her purse, before throwing her to the ground and driving away. Davis had been seen inside Rosie's earlier that day playing on several gaming machines with a "player club card" that did not belong to him. Davis had also visited the casino on other days prior to the attack. Pollack suffered various injuries from Davis's attack, including a broken foot.

As a result of her injuries, Pollack sued Rosie's on April 24, 2023, claiming that Rosie's negligence caused her injuries. In her complaint, Pollack alleged that Rosie's "had numerous guards and cameras in the building to protect its profits, but none in the parking lot to protect patrons" like her. On May 16, 2023, Rosie's filed its demurrer and, in the alternative, an answer asserting that it did not have a duty to protect Pollack from criminal assaults by third parties like

---

[1] Since the circuit court dismissed Pollack's case on demurrer, this "recitation of the facts, of course, restates only factual allegations that, even if plausibly pleaded, are as yet wholly untested by the adversarial process." *A.H. ex rel. C.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 614 (2019). Hence, in reviewing the circuit court's judgment, "we accept as true all factual allegations expressly pleaded in the complaint and interpret those allegations in the light most favorable to" Pollack. *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018). But we may "not admit 'inferences or conclusions from facts not stated.'" *Friends of the Rappahannock v. Caroline Cnty. Bd. of Supervisors*, 286 Va. 38, 44 (2013) (quoting *Arlington Yellow Cab Co. v. Transp., Inc.*, 207 Va. 313, 319 (1966)).

[2] Pollack does not allege that Rosie's also operated a hotel on its premises.

Davis. The circuit court conducted a hearing on the demurrer on August 31, 2023. Then, on September 8, 2023, the circuit court sustained the demurrer and dismissed the case without prejudice after finding that the factual allegations in the complaint were insufficient "to establish that the Defendant had a duty of care to protect the Plaintiff from a criminal assault by a third party such that a jury could find it liable for those injuries." However, the circuit court granted Pollack leave to file an amended complaint.

On September 28, 2023, Pollack filed her amended complaint, alleging that Rosie's was liable for her injuries because Pollack was a "business invitee" and Rosie's therefore "had a duty to have the premises reasonably safe for her visit." Pollack's amended complaint further alleged that Rosie's, a casino, "attracts a criminal element, and provides a climate for assaultive crimes." Hence, Pollack contended, the nature of Rosie's business created a "special duty" which Rosie's owed to Pollack to protect her from and warn her of potential criminal activity in the area. Pollack further alleged that "[i]t is well known that casinos have a great deal of cash in circulation, [and that] [i]ts patrons often come in with substantial sums of money and even, if lucky, sometimes leave with substantial sums of cash." Pollack further asserted that Rosie's was located in a high-crime area of Richmond and that "crime in the area [had] increased by 137%" after Rosie's opened. The amended complaint incorporated an attached exhibit from an unnamed source that indicated there had been three assaults in the general area in which Rosie's operated during the three years before Rosie's opened. The amended complaint also contended that ten assaults had occurred in the same area during the approximately three years after Rosie's opened.

Pollack's amended complaint further alleged that Rosie's had promised the "Gaming Commission"[3] "as part of its application to operate a casino" that it would have security patrols, a surveillance tower, and surveillance cameras in its parking lot. In addition, Pollack alleged that on the day she was assaulted, "[t]here were no patrols, the tower was folded up and not in use, and the cameras trained on the parking lot were not monitored." But Pollack's amended complaint did not denote whether she had been to Rosie's on other days where security measures were active. The amended complaint also alleged that a review of the camera footage showed Davis "cruising the parking lot, suspiciously on several occasions before th[e] attack." Hence, Pollack contended, Rosie's was "on notice" regarding Davis's presence on the property and with "reasonable precautions" could have discovered that he was "a danger to those like [Pollack]."

On October 6, 2023, Rosie's filed a demurrer to the amended complaint. In the alternative, Rosie's also filed an answer, contending that the amended complaint failed to establish that it owed a duty to protect Pollack from Davis's assault. Following a hearing, the circuit court sustained the demurrer, finding that Pollack failed to establish a duty under either the special relationship or assumed duty exceptions to the general rule that a defendant is not liable for the criminal actions of a third party. As a result, the circuit court dismissed the amended complaint with prejudice. Pollack appealed.

II. ANALYSIS

A. *Standard of Review*

"Reviewing a [circuit] court's decision to sustain a demurrer is a matter of law that is reviewed de novo." *Hazelwood v. Law. Garage, LLC*, 81 Va. App. 586, 594 (2024). Under Virginia law, "[t]he purpose of a demurrer is to determine whether the pleading and any proper

---

[3] From the record, Pollack refers to this regulatory entity as either the Gaming Commission or the Virginia Racing Commission. Accordingly, we refer to the entity as the Gaming Commission consistent with her amended complaint.

- 4 -

attachments state a cause of action upon which relief can be given." *Young-Allen v. Bank of Am.*, 298 Va. 462, 467 (2020) (quoting *Steward v. Holland Fam. Props., LLC*, 284 Va. 282, 286 (2012)). "To survive a challenge by demurrer, a pleading must be made with 'sufficient definiteness to enable the court to find the existence of a legal basis for its judgment.'" *Doe ex rel. Doe v. Baker*, 299 Va. 628, 644-45 (2021) (quoting *Squire v. Va. Hous. Dev. Auth.*, 287 Va. 507, 514 (2014)). "[E]ven though a . . . complaint may be imperfect, when it is drafted so that defendant *cannot mistake the true nature of the claim*, the trial court should overrule the demurrer." *Assurance Data, Inc. v. Malyevac*, 286 Va. 137, 143 (2013) (emphasis added) (quoting *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24 (1993)).

Thus, "[i]n deciding whether to sustain a demurrer, the sole question . . . is whether the facts pleaded, implied, and fairly and justly inferred are legally sufficient to state a cause of action against a defendant." *Pendleton v. Newsome*, 290 Va. 162, 171 (2015). "But we are not bound by the [complaint's] conclusions of law that are couched as facts." *Theologis v. Weiler*, 76 Va. App. 596, 600 (2023). Nor are we bound by "conclusory allegations" that are not supported by instances of "specific conduct." *Ogunde v. Prison Health Servs.*, 274 Va. 55, 66 (2007) (quoting *Jordan v. Shands*, 255 Va. 492, 499 (1998)).

> B. *Pollack failed to allege facts sufficient to show that Rosie's owed her a duty to protect or warn against Davis's criminal actions.*

Pollack asserts on brief that the circuit court erred by determining that Rosie's owed her no duty to "protect" her from Davis's presence on the property or to "warn" her about the danger he posed. She contends as a matter of first impression that casinos in Virginia owe a "special" duty to protect and warn their customers based upon the nature of their business. Pollack further contends, in the alternative, that by agreeing with a state regulatory agency to provide certain security measures in its parking lot, Rosie's assumed a duty to protect and warn Pollack of Davis's presence on the casino property. We disagree.

Drawing from the traditional view, that "[t]here is no tort liability for nonfeasance," *Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 84 (2019) (quoting William L. Prosser & W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 92, at 657 (Dan B. Dobbs et al. eds., 5th ed. 1984)), generally "there is no duty to warn or protect against acts of criminal assault by third parties," *Terry v. Irish Fleet, Inc.*, 296 Va. 129, 135 (2018) (quoting *Brown v. Jacobs*, 289 Va. 209, 215 (2015)). "This is so because under 'ordinary circumstances, acts of assaultive criminal behavior by third persons cannot reasonably be foreseen.'" *A.H. ex rel. C.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 618 (2019) (quoting *Terry*, 296 Va. at 135). Hence, "in only rare circumstances has [the Supreme Court] determined that the duty to protect against harm from third party criminal acts exists." *Id.* (quoting *Commonwealth v. Peterson*, 286 Va. 349, 359 (2013)). "Two such rare circumstances exist that constitute exceptions to this general rule of non-liability." *Id.*

The first exception to the general rule is when there is a special de jure relationship, arising as matter of law or by the attendant circumstances, "between the defendant and the third person which imposes a duty upon the defendant to control the third person's conduct," or "between the defendant and the plaintiff which gives a right to protection to the plaintiff." *Id.* at 619 (quoting *Brown*, 289 Va. at 215). And "[b]efore [this] exception comes into play, the facts must establish the existence of [that] special relationship." *Peterson*, 286 Va. at 356. Hence, "the finding of a special relationship is a 'threshold requirement'" to this exception's application. *Terry*, 296 Va. at 136 (quoting *Brown*, 289 Va. at 215). Thence, "the degree of the foreseeability of harm that the plaintiff must establish depends on the nature of the special relationship."[4] *Peterson*, 286 Va. at 357.

The second exception is for situations where the defendant "assumes a duty to protect another from criminal harm." *Church of God*, 297 Va. at 619. This exception provides "that a

---

[4] Foreseeability in this context is related to the risk of harm that causes the duty to arise, as separated from foreseeability of the harm in determining proximate causation of a plaintiff's injury. *See Quisenberry v. Huntington Ingalls Inc.*, 296 Va. 233, 245 (2018).

defendant may owe a duty to protect against an act of criminal assault by a third party where the defendant voluntarily undertook such duty by expressly communicating his intention to do so." *Terry*, 296 Va. at 136. The principle undergirding this exception stems from "ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." *Didato v. Strehler*, 262 Va. 617, 628 (2001) (quoting *Nolde Bros. v. Wray*, 221 Va. 25, 28 (1980)). Here, Pollack argues that both exceptions apply. We take each exception in turn.

1. <u>Pollack fails to show that there was an imminent probability of criminal assault, that Rosie's was aware of occurring on its premises which Rosie's declined to warn Pollack about, sufficient to satisfy the special relationship exception.</u>

Pollack first contends that Rosie's owed her a special duty to protect from and warn her about Davis's presence on the casino property. To that end, Pollack asserts in the alternative: 1) that casinos have a special de jure relationship with their patrons beyond that of a general business invitor and invitee; 2) that such a relationship exists due to the nature of Rosie's business, which Pollack claims provides a climate for "assaultive crimes"; and 3) that Rosie's had sufficient notice of the potential of imminent harm to persons like Pollack based upon Davis's presence on the property thereby requiring Rosie's to undertake additional precautions to protect her from potential criminal assaults on its premises. We disagree with her contentions.

"Certain special relationships such as that of a common carrier/passenger, innkeeper/guest, and employer/employee impose a duty to warn when the danger of third-party criminal acts is known or reasonably foreseeable." *Peterson*, 286 Va. at 357. Such de jure special relationships were recognized at common law. *See Taboada v. Daly Seven, Inc.*, 271 Va. 313, 325-26 (2006) (analyzing the de jure special relationship between an innkeeper and a guest); *A.H. v. Rockingham Publ'g Co.*, 255 Va. 216, 221 (1998) (analyzing the de jure special relationship between an employer and an employee); *Connell v. Chesapeake & Ohio Ry. Co.*, 93 Va. 44, 62

(1896) (analyzing the de jure special relationship between a common carrier and their passenger). Business owners also have been found to have a similar but more limited special relationship with business invitees that requires their protection from "specific individual[s]" known to the owners "to be violent and to have committed assaults on other invitees on its property in the recent past."[5] *Thompson v. Skate Am., Inc.*, 261 Va. 121, 130 (2001).

Where the relationship between the parties is that of a business invitor and business invitee, "a business invitor, whose method of business does not attract or provide a climate for assaultive crimes, does not have a duty to take measures to protect an invitee against criminal assault unless he knows that criminal assaults against persons are occurring, or are about to occur, on the premises which indicate an imminent probability of harm to an invitee." *Wright v. Webb*, 234 Va. 527, 533 (2001). Said more precisely, to show that the defendant owed a duty to protect against third-party criminal assaults under *Wright*, a

> plaintiff must establish a duty by the defendant to protect him from
> criminal assault by a third party by showing either that 1) the
> business invitor's method of business attracts or provides a climate
> for assaultive crimes, or[, in the alternative,] 2) that the business
> invitor had knowledge that criminal assaults against invitees are
> imminent.

*Godfrey v. Boddie-Noell Enters.*, 843 F. Supp. 114, 120 (E.D. Va. 1994), *aff'd*, 46 F.3d 1124 (4th Cir. 1995) (unpublished opinion). However, the *Wright* Court declined to provide any further guidance on when a "method of business attracts or provides a climate for assaultive crimes." 234 Va. at 533.

In interpreting *Wright*, the Fourth Circuit Court of Appeals has found under its "method of business" exception, that an "assault-fostering business" is one where "the business enterprise *itself* is particularly solicitous of, encouraging of, or benefiting from, *assaultive* behavior." *Roe v.*

---

[5] Both parties agree that the relationship between Rosie's and Pollack is *at least* that of a business invitor and invitee.

*Spotsylvania Mall Co.*, No. 96-2403, 1998 U.S. App. LEXIS 7806, at *9 (4th Cir. Apr. 22, 1998) (per curiam) (emphases added) (applying *Wright*, finding that though a mall was specifically alleged to be "a semi-public thoroughfare with minimal security that had experienced numerous crimes, and that "50 crimes against the person took place at the mall during the four years" before the plaintiff was attacked, such allegations were insufficient to show the mall operator "encouraged or benefited from a climate of criminal assault" to permit her to invoke the method of business exception). In other words, to constitute such an assault-fostering business the business invitor must "encourage or condone," such criminal or assaultive activity or by "catering" its operations to "assailants" cause the enterprise to "directly benefit[] from the presence of criminal or assaultive behavior," *Godfrey*, 843 F. Supp. at 123, or in some way be shown to have "incorporate[d] criminal elements into its business practices," *Fant v. Wal-Mart Stores, Inc.*, No. 3:15-cv-474, 2015 U.S. Dist. LEXIS 137526, at *3 n.2 (E.D. Va. Oct. 7, 2015), *aff'd*, 633 Fed. Appx. 196 (4th Cir. 2016) (unpublished opinion). The justification for requiring a nexus between criminal activity and the business's operations to demonstrate that it is an "assault-*fostering* business" is to prevent a business providing any "public accommodation [from being deemed to] provide a climate for assaultive crimes," greatly increasing the potential for tort liability based off business type or location standing alone. *Roe*, 1998 U.S. App. LEXIS 7806, at *9 (emphasis added). In light of *Wright*'s application to "special circumstances," 234 Va. at 532, we find the Fourth Circuit's discussion of what constitutes an assault-fostering business in *Roe* persuasive for our purposes.

Further, where the business in question is not an assault-fostering business, the business invitor has a duty to protect its invitee against third-party assaults only if "he knows that criminal assaults against persons are occurring, or are about to occur, on the premises which indicate an *imminent probability* of harm to an invitee." *Dudas v. Glenwood Golf Club*, 261 Va. 133, 137 (2001) (emphasis added) (quoting *Wright*, 234 Va. at 533). In other words, to be liable, the

defendant must have "notice of a specific danger *just prior* to the assault." *Thompson*, 261 Va. at 129 (emphasis added) (quoting *Wright*, 234 Va. at 533). And, even when the defendant has notice of "occasional" criminal activity, the Supreme Court of Virginia has declined to impose a duty on it under the imminent probability test if the burden from imposing the duty is "unduly great." *Dudas*, 261 Va. at 140-41. "When evidence of prior occurrences is sought to be introduced to establish foreseeability of an unreasonable risk of harm to others, a trial court must determine whether there is a 'substantial similarity' between the prior occurrences and the occurrence in question." *Rockingham Publ'g*, 255 Va. at 224 (finding in a case involving a criminal sexual assault upon a 13-year old independent contractor who delivered newspapers for the defendant that "three previous pre-dawn [similar] assaults" on newspaper carriers over 5 years before the attack, which were not near the plaintiff's route, and a police chart summarizing "five 'non-carrier' assaults" that involved different types of victims to be insufficient to show "substantial similarity"). The frequency and type of assaultive crimes conducted in the business owner's area is pertinent to this inquiry. *See Wright*, 234 Va. at 529-30. However, even where previous criminal conduct on the premises is of the same type suffered by the plaintiff, the infrequency of the conduct may lecture against finding the conduct to be foreseeable to the defendant. *Dudas*, 261 Va. at 136 (finding that evidence showing that two armed robberies and one attempted robbery of business invitees had occurred on the subject premises prior to the plaintiff being robbed was insufficient to justify imposing a duty to warn on the invitor).

Here, Pollack first asks us to establish a per se rule that casinos owe their patrons a special duty beyond that owed by other types of businesses, as a de jure special relationship. We find this argument unpersuasive.

In examining the businesses that owe a special de jure relationship beyond that of a general business invitor, we find that casinos do not have the characteristics to be judged to owe the same

duty, nor does the historical record nor American legal precedent command such a relationship. Foremost, the Supreme Court generally requires the demanding imminent probability test for the overwhelming majority of businesses "because a business invitee does not entrust his safety to a business invitor to the same extent a passenger does to a common carrier." *Wright*, 234 Va. at 532. Drawing from this guidance, to impose a greater duty upon casinos as a matter of law would require casino patrons to entrust their safety to the business in a similar manner. We find this not to be the case. In juxtaposing casino patrons against other invitees owed a heightened de jure relationship— hotel guests or common carrier passengers—there is no justification for a heightened duty that arises inherently from the operations of a casino. The special de jure relationship owed by hotels and common carriers stems from their *custody* over the individual (and their property) required of such businesses as an inherent part of their services. *See Taboada*, 271 Va. at 325 ("Like a passenger, the guest of an innkeeper entrusts his safety to the innkeeper and has little ability to control his environment."). This condition is not present with the services casinos provide, making them more akin to a general business whose liability for third party criminal assaults is governed by *Wright*. Thus, we decline to impose the rigid heightened duty owed by those businesses who owe a special de jure duty to casinos in all cases because it would be inappropriate in light of the fact that guests of casinos can take precautions to ensure their safety unlike guests of an innkeeper or common carrier, who are largely at the mercy of their proprietor.

Moreover, we find no precedential support for the judicial imposition of Pollack's requested heightened duty. There is no evidence that at common law, casinos, then-known as gambling houses, were statutorily or regulatorily required to undertake precautions similar to the precautions taken by common carriers or innkeepers. In addition, none of our sister courts, either state or

- 11 -

federal, have held that such a duty exists when determining the tort liability of casinos.[6]  Hence, "we will apply the law as it now exists, because we believe that a decision whether to abrogate such a fundamental rule [in creating a special duty not provided in the common law] as the one under consideration is the function of the legislative, not judicial, branch of government."  *Williamson v. Old Brogue, Inc.*, 232 Va. 350, 354 (1986).  "Where, as here, the issue involves many competing economic, societal, and policy considerations, legislative procedures and safeguards are particularly appropriate to the task of fashioning an appropriate change, if any, to the settled rule."  *Id.*  Therefore, we decline Pollack's invitation to impose a special de jure duty on casinos regarding their premises as a matter of law.

Next, Pollack contends that Rosie's owed her a special duty because of the nature of its business, which attracts individuals likely to engage in crime.  In the alternative, Pollack also contends that Rosie's was sufficiently aware of the potential for harm caused by Davis as he had been seen in the casino playing with another person's card and that the casino's security observed him "lurking" in the parking lot.  In further support of this position, Pollack asserts in her amended complaint that consistent with the holding in *Thompson v. Skate America*, the circuit court erred in failing to find that Rosie's was properly on notice of the potential for harm to patrons posed by Davis's presence on the premises.  We find both contentions misguided.

---

[6] In fact, these courts generally agree that the duty owed by a casino to its guests is the *same* as the duty owed by a non-casino business to its invitees.  *Johnson v. HWCC-Tunica Inc.*, 494 Fed. Appx. 440, 443 (5th Cir. 2012) (applying "Mississippi law of premises liability for invitees" to allegations of negligence by defendant casino); *Early v. N.L.V. Casino Corp.*, 678 P.2d 683, 684-85 (Nev. 1984) (noting in a case involving a criminal assault within a casino that "the duty owed to an invitee such as a casino patron is to use reasonable and ordinary care in keeping the premises safe for the benefit of patrons"); *Doud v. Las Vegas Hilton Corp.*, 864 P.2d 796, 800 (Nev. 1993) (same); *Marmer v. Queen of New Orleans at the Hilton*, 787 So. 2d 1115, 1116 (La. Ct. App. 2001) (applying the general duty owed by a business invitor to its invitees to casino); *Nguyen v. MGM Nat'l Harbor, LLC*, No. GLS-21-1602, 2022 U.S. Dist. LEXIS 168011, at *13 (D. Md. Sept. 16, 2022) (analyzing duty owed to business invitees in case involving casino's premises liability).

At first glance, even when viewing the facts pleaded in the light most favorable to Pollack, many of the allegations in her amended complaint sound as legal conclusions rather than factual assertions and thus cannot sufficiently support her position when applied to longstanding caselaw. *See Wright*, 234 Va. at 532. Pollack's amended complaint further fails to sufficiently plead facts establishing that Rosie's attracts unusually increased criminal activity or receives a *benefit* from this alleged criminal behavior. The amended complaint seemingly concludes that the nature of Rosie's casino business "attract[ed] a criminal element, and provide[d] a climate for assaultive crimes." However, her assertion alone is simply a legal conclusion that does not bind us as it is divorced from the pleaded facts and basically parrots the operative language from *Wright*, without further connection. *Theologis*, 76 Va. App. at 600. "Indeed, a gambling casino where cash and liquor are constantly flowing *may* provide a fertile environment for criminal conduct such as robbery and assault."[7] *Early v. N.L.V. Casino Corp.*, 678 P.2d 683, 685 (Nev. 1984) (emphasis added), *overruled in part on other grounds by*, *Moody v. Manny's Auto Repair*, 871 P.2d 935, 940 (Nev. 1994). But Pollack does not plead facts that show Rosie's welcomed a criminal element to its premises sufficient to impose liability for Davis's assault. The potential for increased criminal conduct alone also does not sufficiently support Pollack's conclusion that Rosie's, the casino in question, knows of, condones, or welcomes criminal behavior on its premises sufficient to impose a heightened duty. *See Roe*, 1998 U.S. App. LEXIS 7806, at *9; *Godfrey*, 843 F. Supp. at 123. Without more, the imposition of a such a duty would cause this exception to subsume the rule as it would essentially require entertainment proprietors "to have an attendant, guard or usher for every patron" in their parking lots, a precaution far greater than what is required of a general business. *Twin City Amusement Co. v. Salater*, 372 S.W.2d 224, 226 (Ark. 1963). Hence, "while

---

[7] However, the furnishing of alcohol on its own has been found to be insufficient to impose liability for third-party criminal acts in Virginia. *See Robinson v. Matt Mary Moran, Inc.*, 259 Va. 412, 417 (2000).

- 13 -

the nature of the business conducted or the characteristics of the premises itself, under certain circumstances, may be relevant to the issue of foreseeability, a bare argument based on same, without more, does not suffice to establish a duty to protect patrons from the criminal acts of third parties." *Marmer v. Queen of New Orleans at the Hilton*, 787 So. 2d 1115, 1122 (La. Ct. App. 2001). In other words, Pollack must plead more than just a legal conclusion that the nature of a business, by itself, *creates a risk of assaultive crimes*. *See Roe*, 1998 U.S. App. LEXIS 7806, at *9.

Pollack also fails to plead facts that, even if taken as true, would satisfy the "method of business" exception. For instance, Pollack alleges in her amended complaint that Rosie's owed her such a special duty because Rosie's is located in a high crime area and that crime increased there after Rosie's opened. However, Rosie's *location* has nothing to do with whether the nature of Rosie's business attracts crime or whether Rosie's tolerated the presence of a criminal element on its property. *Altepeter v. Virgil State Bank*, 104 N.E.2d 334, 339 (Ill. App. Ct. 1952) (finding that a plaintiff's amended complaint failed to show a bank owed a special duty where "[t]here [wa]s no charge in the . . . complaint that appellee knowingly permitted robbers or undesirable characters to loiter about its premises"). In fact, reasons other than the location of a business can be a catalyst for increased criminal activity. *See Shadday v. Omni Hotels Mgmt. Corp.*, 477 F.3d 511, 514 (7th Cir. 2007) (noting that "[o]ne reason better neighborhoods have lower crime rates is that they're better protected because they are bigger potential targets for criminals"). Thus, though some casinos may attract assaultive conduct by business practices or by location, that fact is not true for *all* casinos in all cases, and we find no reason to adopt Pollack's argued-for generality.

Moreover, Pollack's amended complaint fails to either define the area wherein crime has increased or draw a causal connection between Rosie's and any increase in crime. For example, Pollack alleged that there were ten assaults in the "area" in the three years after Rosie's opened. However, she did not allege how many of those assaults, if any, happened on Rosie's property, how

- 14 -

many of those alleged assaults were committed by or against Rosie's patrons, or any other facts that might connect the assaults to either the location or nature of Rosie's casino business. Pollack's only attempt to draw a causal connection between her assault and the increase in crime in the area is her allegation that Rosie's patrons often carry "substantial sums of cash." However, we decline to hold that a business attracts criminal assaults merely because its patrons often carry cash in substantial sums. Plainly, "[c]orrelation is not causation." *See Norfolk & W. Ry. v. Ayers*, 538 U.S. 135, 173 (2003) (Kennedy, J., concurring in part and dissenting in part). Without more, Pollack's allegations—which we assume factually correct as pleaded—only establish that Rosie's business opened in a high crime area and that crimes have increased in that area since Rosie's opened for business. There is no factual allegation connecting the alleged uptick in criminal activity to Rosie's casino. *See Rockingham Publ'g*, 255 Va. at 224. And there is no allegation that Rosie's in any way benefited from having such assaultive behavior on its property. *See Roe*, 1998 U.S. App. LEXIS 7806, at *9. Hence, we conclude that Pollack has failed to show Rosie's owed her a special duty under the "method of business" exception.

Having found that Rosie's was not bound by a special duty to provide additional protections to its patrons as a result of its method of business, we next turn to whether Pollack's amended complaint alleged sufficient facts to prove that Rosie's knew that a third-party assault against Pollack was imminently probable. Here, after reviewing the factual allegations in the amended complaint, we also cannot find that Pollack alleged facts sufficient to establish that Rosie's knew that a third-party assault against Pollack was imminently probable. For example, although Pollack alleged that Davis was "a convicted murderer" and "had a criminal history of violent action," she did not allege that Rosie's knew either of those facts. Simply put, without more, a business is not required to conduct a criminal background check on its invitees to avoid being held liable in negligence. And without such an affirmative requirement it is difficult to fathom how Rosie's

through "reasonable precautions" would have otherwise discovered that Davis was a convicted felon. Even though Pollack alleged that Rosie's knew about the criminal potential posed by Davis because he "was observed using a card or credit slip that did not belong to him" while inside the casino, this allegation alone does not show the casino knew of his potential violent propensity. It is at most unclear from that allegation if Rosie's knew before the attack that Davis had committed fraud, and even if it did, "knowledge of prior crimes against property does not create a duty upon a business invitor to anticipate and guard against assaults upon its invitees, offenses involving a *substantially different kind of criminal behavior*." *Wright*, 234 Va. at 531-32 (emphasis added). Hence, Pollack's allegation only served to show that Davis may have been known to have committed fraud on the property, not that he was a risk to commit a violent assault. At a minimum, the allegations were insufficient to show that Rosie's knew of Davis's propensity for violence.

Further, Pollack's alleged crime statistics in the amended complaint also fail to establish that a criminal assault against her was "imminently probable" while she was walking through the parking lot of Rosie's casino business. In fact, the statistics even when accepted as true only reflected that ten assaults had occurred in an undefined area around Rosie's over a period of three years. We find the allegation that ten assaults had occurred in an undefined area, including assaults on property not owned by Rosie's three years before Davis's assault, could not lead a reasonable person to conclude that the assault against Pollack on Rosie's property was "imminently probable." *See Dudas*, 261 Va. at 140.

Finally, Pollack's reliance on *Thompson* to show that Rosie's was aware of the immediate probability of Davis's assault is also misguided. In contrast to the situation here, the third-party aggressor in the *Thompson* case was a "known trouble maker" who "consistently disobeyed the rules of [the business owner] and generally was a menace to . . . patrons of the skating rink." *Thompson*, 261 Va. at 125 (second alteration in original). Moreover, the skating rink owner had

ejected the third party "[o]n several prior occasions" and had banned him from reentry. *Id.* Thus, the skating rink owner "was on notice specifically that [the plaintiff] was in danger of being injured by [the third party] in a criminal assault." *Id.* at 130. Here, by contrast, Pollack failed to allege any facts demonstrating that Rosie's knew of the danger Davis posed to its patrons. Thus, we find that the circuit court correctly concluded that the special relationship exception recognized in *Thompson* did not apply here. Hence, Pollack's allegations in the amended complaint fail to show that Rosie's owed a special duty to protect Pollack from Davis's assault or to warn her of the potential of Davis assaulting her, as such protection or warning was beyond the scope of the duty Rosie's owed to Pollack as a business invitee.

2. <u>Pollack also fails to allege facts sufficient to establish that Rosie's assumed a duty to protect her from third-party criminal acts by agreeing to provide general security measures on the parking lot of its property.</u>

Pollack also asserts, in the alternative, that Rosie's assumed a duty to protect her when it promised the Gaming Commission that it would have security patrols, a surveillance tower, and surveillance cameras in the parking lot. We disagree.

Pursuant to this exception, declining to impose tort liability for nonfeasance, "[o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person" can be liable to the third person for physical harm if: 1) "his failure to exercise reasonable care increases the risk of such harm"; 2) "he has undertaken to perform a duty owed by the other to the third person"; or 3) "the harm is suffered because of reliance of the other or the third person upon the undertaking." *Burns v. Gagnon*, 283 Va. 657, 672 (2012) (quoting Restatement (Second) of Torts, § 324A). This "duty may be voluntarily assumed, imposed by statute, provided for in a contract, or imposed by the courts under tort law." 22 Louis R. Frumer & Melvin I. Friedman, *Personal Injury—Actions, Defenses,*

*Damages* § 108.01 (Matthew Bender, rev. ed. 2025).  And "a duty that does not otherwise exist may be impliedly assumed from the defendant's conduct."  *Terry*, 296 Va. at 138.

But "[a]n assumed duty to protect cannot be predicated solely upon an uncommunicated 'implied undertaking' that is itself based entirely upon 'voluntary conduct.'"[8]  *Church of God*, 297 Va. at 624 (quoting *Terry*, 296 Va. at 138-40).  Further "[s]uch a duty is not inferred merely because the defendant 'took precautions not required of it' to protect the safety of the plaintiff."  *Id.* (quoting *Terry*, 296 Va. at 137).  Otherwise, "[t]he judicial 'creation of a duty under these circumstances would discourage other parties from taking extra precautions to avoid being subjected to a liability which they otherwise would not have had.'"  *Id.* (quoting *Terry*, 296 Va. at 138).  Thus, "to find such an assumed duty to protect, an action greater than an 'implied undertaking' based merely upon 'voluntary conduct' is necessary."  *Id.* (quoting *Terry*, 296 Va. at 140).  As a result, the plaintiff must plead "an action tantamount to an 'express communication' of a 'specifically described undertaking'" for the Court "to conclude that a defendant has assumed a legal duty to protect another from a criminal assault."  *Id.*  Similarly, the Supreme Court of Virginia has dismissed the argument that a landlord had an "imposed" duty to protect its tenants from criminal acts by complying with a local dead-bolt ordinance.  *See, e.g.*, *Klingbeil Mgmt. Grp. Co. v. Vito*, 233 Va. 445, 451 (1987).

---

[8] In some cases, the Supreme Court of Virginia has found the defendant's exercise of control over the third party, or the "defendants['] [awareness] of [the plaintiff's] particular vulnerabilities and her psychiatric history" while in their care supported a finding that the defendant assumed a duty to protect the plaintiff from assaultive conduct, a de facto special relationship. *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 134 (2000) (holding that a medical facility created de facto special relationship with its patient when it determined that she was in need of constant supervision and surveillance); *Burdette v. Marks*, 244 Va. 309, 312-13 (1992) (holding that a de facto special relationship existed between deputy detaining inmate and passerby, which imposed legal duty upon deputy to render assistance to passerby and protect him from the inmate's attack).  But neither of these situations is before this Court as Pollack does not allege that Rosie's had *control* over Davis, nor does she assert Rosie's was aware of her potential vulnerability as being elderly and failed to take precautions on those grounds.

We find that Pollack's pleadings, even taken as true, fail to satisfy the conditions necessary for an assumed duty. First, Pollack fails to plead that Rosie's expressly *communicated* that it would voluntarily protect her on the property. Instead, she avers that Rosie's failure to follow through on its promises to the *Gaming Commission* increased the risk of a criminal assault occurring beyond what it would have been had Rosie's made no promises at all. But as she fails to plead that this duty was voluntarily communicated to her, beyond her alleged awareness of security precautions on the property, she has merely shown that Rosie's "'took precautions not required of it' to protect" her, which is insufficient to show that it voluntarily assumed a duty to protect her. *Church of God*, 297 Va. at 624 (quoting *Terry*, 296 Va. at 138-40). Second, Pollack fails to allege that Rosie's, by allegedly providing security precautions in its parking lot to perform a duty that it owed the Gaming Commission, owed this duty to the benefit of Pollack. As the Supreme Court of Virginia has "not, however, recognized that an *implied undertaking* may give rise to an assumed duty to warn or protect against the danger of a criminal act by a third party," *Terry*, 296 Va. at 138-39, Pollack had to plead facts that show Rosie's promise to the Gaming Commission constituted an express assumption of a duty to her or the class of people she belongs to. The fact that Rosie's owed a duty to a regulatory body like the Gaming Commission, standing alone, is insufficient to constitute a voluntary assumption without more. *See Klingbeil Mgmt.*, 233 Va. at 451. For instance, Pollack's pleadings fail to even provide what type of promise Rosie's made to the Gaming Commission,[9] let alone provide any detail of who the security protections were to benefit, what they encompassed, or any pertinent detail beyond a conclusory allegation. *See, e.g.*, *Roles v. Mason*, 202 Va. 690, 693 (1961) (sustaining a demurrer where the allegations showed "the agreement was too uncertain to be

---

[9] For instance, such an allegation might include whether this requirement arose by contract, a consent order, a special or administrative use zoning permit, a city ordinance, or the like. Awareness of these requirements could be drawn from sources such as, but not limited to, the establishment's advertising, parking lot signs, or the establishment's website.

specifically enforced [as alleged] in that it failed to fix the price of sale or provide a method for ascertaining it"). Hence, this allegation is insufficient to show Rosie's assumed a duty to protect Pollack. And finally, Pollack's amended complaint does not allege that Pollack even knew about the promises that Rosie's made to the Gaming Commission before she arrived on the property or while she was on the property and that she relied on them in lieu of taking other personal precautions. Absent such allegations, the amended complaint did not establish that Rosie's voluntarily assumed any duties toward Pollack. Therefore, we find Pollack fails to plead sufficient facts to invoke the assumed duty exception.

### III. CONCLUSION

As Justice Holmes wrote over a century ago: "The business of the law of torts is to fix the dividing line between those cases in which a man is liable for harm which he has done, and those in which he is not." Oliver Wendell Holmes, Jr., *The Common Law* 64 (Mark D. Howe ed. 1963). But not every decision regarding where to draw that line is for the judiciary to make. *See Bruce Farms, Inc. v. Coupe*, 219 Va. 287, 293 (1978) (noting "issue[s] [at bar that] involve[] a multitude of competing economic, cultural, and societal values [are those that] courts are ill-equipped to balance"). Today, in accordance with that wisdom, we find that Pollack's request that this Court find that casinos owe their patrons a de jure special duty is one that should be made by "the legislative, not judicial, branch of government," *Williamson*, 232 Va. at 354, and we, as a result, "apply the law as we find it to be" and so must treat casinos similar to other business invitees, *Bruce Farms*, 219 Va. at 293.

Further, we hold that casinos, by the nature of their operations and their clientele, are not assault-fostering businesses under *Wright*'s "method of business" exception, based on the facts here alone. Also, Pollack's amended complaint failed to plead that Rosie's in fact was aware of the imminent probability of Davis's criminal assault, or, through its existing precautions,

- 20 -

expressly communicated that it was assuming a duty to protect her from or warn her of potential harm caused by a third-party criminal. Therefore, since Pollack's amended complaint fails to state a cause of action, we affirm the circuit court's judgment.

*Affirmed.*